**GAY STUDENT SERVICES et al.,**
**Plaintiffs-Appellants,**

v.

**TEXAS A & M UNIVERSITY et al.,**
**Defendants-Appellees.**

**No. 77–3395.**

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1980.

---

Nelson & Mallett, J. Patrick Wiseman, Hormachea & Sauer, Larry Sauer, Sarah Scott, Houston, Tex., for plaintiffs-appellants.

**162**

Robert G. Turner, Houston, Tex., for National Gay Task Force.

Donald C. Knutson, San Francisco, Cal., Thomas F. Coleman, Los Angeles, Cal., for National Committee for Sexual Civil Liberties.

Lonny F. Zwiener, Nathan Johnson, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before COLEMAN, Chief Judge, FRANK M. JOHNSON, Jr. and POLITZ, Circuit Judges.

COLEMAN, Chief Judge.

The plaintiffs-appellants are student members of Gay Student Services, a voluntary association which has sought and been denied official registration as a student organization by Texas A & M University at College Station.[1]

The complaint alleged that on April 4, 1976, representatives of Gay Student Services met with Dr. John Koldus and requested certain privileges for their organization, including access to bulletin boards and facilities for special events. This request was refused and the students informed Dr. Koldus that they would request *formal recognition* of Gay Student Services. Dr. Koldus told the students to submit their formal application to Dr. Adair, Director of Student Activities; he then would suspend the regular procedure of appealing to the Student Organization Board and would personally render a decision on the application.

Application for recognition was submitted April 5, 1976. On May 4, 1976, representatives of Gay Student Services met again with Dr. Koldus, who reported that he had written a response to the application but had been asked by University officials to delay its release until the President and University legal staff had an opportunity to study the request. Koldus also told the student representatives that he had ordered the "Batallion," the student newspaper, not to print stories about Gay Student Services but that he was changing this order so that news articles could be printed.

On November 29, 1976, Dr. Koldus wrote a letter denying official recognition to the group. In this letter he noted that homosexual conduct was illegal in Texas [as it undoubtedly is under Chapter 21 of the Texas Criminal Code] and that Gay Student Services was likely to promote and incite acts contrary to and in violation of the Texas Penal Code. He concluded that Gay Student Services was not "consistent with the philosophy and goals that have been developed for the creation and existence of Texas A & M University."

The complaint further alleges that due to the denial of official recognition the group has been forced to secure off-campus meeting places, involving rent and maintenance costs; meetings have often been in private homes, limiting the number who can attend; hostility of other students toward the organization has increased; members of the organization have been restricted in their ability to speak to classes and seminars; advertising and distribution of literature informing students of meetings, services, and educational goals of the organization has been severely limited; and "traditional myths" about sexual stereotypes have been reinforced. The plaintiffs further state that Texas A & M University has at no time prohibited the enrollment of men and women who openly identify themselves as homosexuals. Nevertheless, it refuses these students the same rights as other students to organize and meet for the purpose of discussing common interests and problems.

The relief sought by plaintiffs included (1) an injunction permanently enjoining the

1. Listed as defendants are Texas A & M University, Jack K. Williams, President of Texas A & M at College Station, John J. Koldus, Vice-President for Student Services at Texas A & M at College Station, and W. C. Freeman, Executive Vice-President for Administration at Texas A & M at College Station. Also named as defendants are the members of the Board of Regents for Texas A & M. All defendants are sued in their *official* capacities and not individually.

defendants from continuing to enforce their policy in refusing to recognize Gay Student Services, (2) a declaratory judgment declaring the policy of the defendants unconstitutional on its face, (3) damages for the deprivation of their rights to express their views and assemble together, and (4) costs, including reasonable attorneys fees.

The defendants answered, admitting only that Gay Student Services had applied for official University recognition and had been denied.

On June 28, 1977, the defendants filed a motion to dismiss. It was alleged that (1) Texas A & M University and the other named individual defendants, sued in their official capacity, were not "persons" for the purposes of 42 U.S.C. § 1983; therefore, jurisdiction was lacking under 28 U.S.C. § 1343, (2) plaintiffs had not stated a cause of action giving rise to general federal question jurisdiction under 28 U.S.C. § 1331, (3) plaintiffs had not overcome the jurisdictional bar of the 11th Amendment, (4) plaintiffs did not have standing to assert the cause they sought to bring, and that (5) dismissal of the cause as pleaded under §§ 2201 and 2202 was proper.

On November 2, 1977, the District Court entered an order granting defendants' motion to dismiss, commenting only that the motion appeared to be "meritorious and unopposed." No specific ground for the action was stated.

■ Since the dismissal order does not tell us the legal theory upon which the dismissal was based, we proceed to a consideration of all the grounds asserted in the motion to determine whether at this junc-

ture dismissal could have properly been predicated on any one of them.[2]

The result is that the dismissal must be vacated and the case remanded for further proceedings not inconsistent herewith.

## I
### *Asserted Ground No. 1: § 1983 "person" status*

At the time this suit was dismissed by the District Court the Supreme Court decision in *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), had not been handed down. Prior to *Monell,* suits against cities and similar local governmental agencies had been barred under 42 U.S.C. § 1983 because such entities were not "persons" within the meaning of the statute, *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

*Monell* held:

Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

436 U.S. at 690, 98 S.Ct. at 2035–36.

■ Consequently, an institution of higher learning, such as the university here involved, no longer enjoys absolute § 1983 immunity.[3] *Monell* did not specifically mention universities as "persons" but there

---

2. The motion to dismiss did not state that it was premised upon a failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6). We note that such a claim would fail, nevertheless, under the standard set out in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that such a motion should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any statement of facts which could be proved in support of his claim. *See Reeves v. City of Jackson,* 532 F.2d 491 (5th Cir. 1976);

*Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505 (5th Cir. 1971).

3. The *Monell* majority opinion also stated in a footnote: "Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. at 690 n. 54, 98 S.Ct. at 2035–36 n. 54. An entity may be a "person" under § 1983 yet still not be sued for monetary relief due to Eleventh Amendment immunity based upon the entity's close connection with the State and its treasury. This does

would appear to be no analytical difference in the operation of universities and other governing bodies such as cities. *See Goss v. San Jacinto Junior College,* 588 F.2d 96 (5th Cir. 1979), holding San Jacinto Junior College to be a "person" for purposes of § 1983.

Of course, for a university to be suable under § 1983, the injury must be due to an official policy or custom. The *Monell* Court stated:

On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. 436 U.S. at 691, 98 S.Ct. at 2036.

> \*    \*    \*    \*    \*    \*

We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. 436 U.S. at 694, 98 S.Ct. at 2038.

■ The undisputed allegations of the complaint makes it clear that the defendant University officials in this case were, with authority, promulgating and enforcing the official policy of the University as to the controversy in issue.

This "person" status applies to University officials when sued in their official capacity. As *Monell* stated in a footnote:

Since official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent—at least where Eleventh Amendment considerations do not control analysis—our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name.

436 U.S. at 690 n. 55, 98 S.Ct. at 2036–55. *See Rainey v. Jackson State College,* 591 F.2d 1002 (5th Cir. 1979); *Harkless v. Sweeny Independent School District of Sweeny, Texas,* 554 F.2d 1353 (5th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977).[4]

## II

### *Asserted Ground No. 2: 11th Amendment Immunity*

■ If the plaintiffs were seeking only monetary recovery from the defendants, we

---

not, however, prevent declaratory or injunctive relief. The word "person" as used in § 1983 is not intended to have a bifurcated application dependent on the nature of the relief sought. *City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

**4.** After *Monell* was handed down, a number of district court cases holding cities and other various local governing bodies as not "persons" were vacated and remanded for application of *Monell. See, e. g., McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229 (3rd Cir. 1978) (vacating a district court decision relying on pre-*Monell* law in holding the state governmental entity SEPTA not a "person" under § 1983); *Kurek v. Pleasure Driveway and Park District of Peoria, Illinois,* 583 F.2d 378 (7th Cir. 1978) (remanding civil rights action against Park District in light

of *Monell* establishing governmental units as "persons").

For Fifth Circuit cases vacated and remanded in light of *Monell, see, e. g., Thurston v. Dekle,* 531 F.2d 1264 (5th Cir. 1976) (holding city was not suable under § 1983 as a "person" but individual members of municipal agencies were suable in their official capacities), *vacated,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144, *on remand,* 578 F.2d 1167 (5th Cir. 1978) (vacating and remanding to the district court); *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5th Cir. 1976) (en banc) (holding that neither the city nor the Board of Trustees of the policeman and fireman pension fund was a § 1983 "person"), *vacated,* 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144, *on remand,* 586 F.2d 529 (5th Cir. 1978) (city and board held to be "persons" amenable to suit under § 1983).

would first examine the nature of the entity sued to determine whether it is an arm of the state or an independent "political subdivision". *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See Goss v. San Jacinto Junior College, supra* at 98. If Texas A & M University is an arm of the state such that any recovery of damages would, in effect, be against the state, to come from the state treasury, then the Eleventh Amendment would bar the action and recovery.[5] If the University is an independent political body or has in some manner waived its immunity, however, monetary recovery would not impinge on the Eleventh Amendment.[6]

We need not now decide this issue because the plaintiffs seek injunctive and declaratory relief as well as monetary relief. Indeed, the main thrust of plaintiffs' suit is for injunctive relief ordering the University and its officials to grant recognition to plaintiffs' organization. Under

*Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), prospective injunctive relief is clearly allowed against state officials in their official capacities. Dismissal of plaintiffs' claim based upon Eleventh Amendment immunity, therefore, was improper in light of the injunctive relief south. *See Jagnandan v. Giles,* 538 F.2d 1166 (5th Cir. 1976) (injunctive relief granted in § 1983 suit declaring state statute unconstitutional but damages denied because of immunity); *Hander v. San Jacinto Junior College,* 519 F.2d 273, aff'd per curiam on rehearing, 522 F.2d 204 (5th Cir. 1975) (injunction granted in § 1983 suit for reinstatement of faculty member).

## III

### Asserted Ground No. 3: Standing

The assertion that plaintiffs lack standing to bring the suit is *frivolous.*

5. Numerous circuit decisions have found universities to be so closely connected with the state that a suit against the university or its officials is the same as a suit against the state. *E. g., Jagnandan v. Giles,* 538 F.2d 1166 (5th Cir. 1976) (officials and members of Board of Trustees of Mississippi State University held immune from suit to recover excess payments of tuition by resident alien students); *Prebble v. Brodrick,* 535 F.2d 605 (10th Cir. 1976) (suit against members of Board of Trustees of the University of Wyoming barred); *Long v. Richardson,* 525 F.2d 74 (6th Cir. 1975) (Memphis State University officials immune); *Thonen v. Jenkins,* 517 F.2d 3 (4th Cir. 1975) (East Carolina University officials immune); *Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir. 1971) (University of Kansas and University Press of Kansas immune as alter egos of the state); *Walstad v. University of Minnesota Hosps.,* 442 F.2d 634 (8th Cir. 1971).

While we make no determination here concerning the relationship of Texas A & M University to the state of Texas for Eleventh Amendment immunity purposes, we do note that at least one other Texas University with its governing board and officials has been held immune from monetary damages or relief based on the Eleventh Amendment. *Ramos v. Texas Tech University,* 441 F.Supp. 1050 (N.D. Tex.1977), *affirmed on basis of opinion below,* 566 F.2d 573 (5th Cir. 1978) (per curiam). *See Henry v. Texas Tech University,* 466 F.Supp. 141 (N.D.Tex.1979) (explaining in more detail the status of Texas Tech University as an arm

of the state and thus immune under the Eleventh Amendment).

6. Institutions of higher learning that are not so closely connected with the state as to be an instrumentality of the state but rather display the characteristics of an independent body are not immune from suit for monetary relief. *See, e. g., Goss v. San Jacinto Junior College,* 588 F.2d 96 (5th Cir. 1979), *citing Hander v. San Jacinto Junior College,* 519 F.2d 273, aff'd per curiam on rehearing, 522 F.2d 204 (5th Cir. 1975) (under Texas code suit against the junior college was not in reality a suit against the state); *Samuel v. University of Pittsburgh,* 538 F.2d 991 (3rd Cir. 1976) (University of Pittsburgh, Temple University and Penn State University held liable for equitable restitution of tuition fees because of not being state instrumentalities).

Waiver of immunity may occur under state statute or school charter. *See, e. g., Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (school board permitted to be sued "in all courts" under a state code provision held to waive immunity); *Soni v. Board of Trustees of University of Tennessee,* 513 F.2d 347 (6th Cir. 1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976) (suit permitted due to waiver explicit in University's charter allowing suit "in any court of law or equity").

## IV

*Asserted Ground No. 4: § 1331 jurisdiction and cause of action*

■ A fourth ground asserted for dismissal of the present action is that plaintiffs fail to state a cause of action for general federal question jurisdiction under 28 U.S.C. § 1331. This is wholly immaterial because jurisdiction has been properly established under 28 U.S.C. § 1343 for a § 1983 cause of action.

### *Declaratory Judgment*

■ Since jurisdiction has been established at least under § 1343 and § 1983, the separate remedy available through declaratory judgment may also proceed. *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.,* 524 F.2d 968 (5th Cir. 1975).

## CONCLUSION

In view of the foregoing considerations we conclude that the District Court should not have dismissed the complaint on any of the grounds asserted in the motion for dismissal.

In remanding the case for disposition on the merits we intimate no opinion as to how the case should be decided once the relevant facts have been fully developed.

The standards applicable to the disposition of a case of the kind presently before us have never been *specifically* illuminated by the Supreme Court. *See Ratchford v. Gay Lib* (dissent to the denial of certiorari), 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789

(1978). Some of the cases dealing with First Amendment rights of college student associations are footnoted below.[7]

VACATED and REMANDED for further proceedings not inconsistent herewith.

---

7. *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Papish v. University of Missouri Curators,* 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973). In *Healy* it was held that the student organization in question was entitled to recognition under the First Amendment unless there was a showing that the group directly advocated inciting or producing imminent lawless action likely to cause such a result. *Healy* also cited *Tinker v. Des Moines Independent School District,* 393 U.S. 503 at 513, 89 S.Ct. 733, 21 L.Ed.2d 731, for the principle that the power to prohibit "lawless action" is not limited to acts of a criminal nature but may reach actions which "materially and substantially disrupt the work and discipline of the school", etc., 408 U.S. at 189, 92 S.Ct. at 2350.

See, also, *Gay Students Organization of the University of New Hampshire v. Bonner,* 509 F.2d 652 (1st Cir. 1974); *Gay Alliance of Students v. Matthews,* 544 F.2d 162 (4th Cir. 1976); and *Gay Lib v. University of Missouri,* supra, 558 F.2d 848 (8th Cir. 1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978); *M. C. L. U. v. University of Southern Mississippi,* 452 F.2d 564 (5th Cir. 1971); *Hudson v. Harris,* 478 F.2d 244 (10th Cir. 1973); *Mississippi Gay Alliance v. Goudelock,* 536 F.2d 1073 (5th Cir. 1976), *cert. denied,* 430 U.S. 982, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977).