**Walter SESSIONS, Plaintiff-Appellant,**

v.

**RUSK STATE HOSPITAL,**
**Defendant-Appellee.**

No. 80–1359.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 26, 1981.

Daves, McCabe & Crews, Martha McCabe, Tyler, Tex., for plaintiff-appellant.

Iris J. Jones, Asst. Atty. Gen., Austin, Tex., for defendant-appellee.

Before SKELTON *, Senior Judge, and RUBIN and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this employment discrimination action, a black male trainee at a state institution contends that he was denied a promotion because of his race. Suit was originally brought against the state employer pursuant to 42 U.S.C. § 1981, but an amended complaint was filed seven months later asserting a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Because we find that the amendment related back to the date of filing the original

---

* Senior Judge of the United States Court of Claims, sitting by designation.

complaint despite the state's immunity from suit under Section 1981, we conclude that the Title VII claim was timely. Nevertheless, we affirm the judgment dismissing the suit because the discrimination claim fails on the merits.

## I.

Walter Sessions, a black male, applied for in-service training as Unit Administrative Technician II [Ad. Tech. II] at a state institution, Rusk State Hospital in Rusk, Texas. The advertisement posted at the hospital notified applicants that ten Ad. Tech. II positions were available, one for each of the hospital's ten wards. Thirty-one persons applied. According to his personnel file, Sessions was hired by the hospital as a ward aide, but he was accepted, along with sixteen others, for the Ad. Tech. II training program. Sessions was the only black selected as a trainee. Of the seventeen selected for the training program, only Sessions and one other applicant had not been previously employed by the hospital.

Fifteen of the trainees passed the examination. However, because of budgetary restraints and because only ten Ad. Tech. II positions had been advertised, Dr. Inglis, the acting superintendent of the hospital, decided that only ten could be promoted. Dr. Inglis did not know any of the seventeen trainees. He did not know, and did not try to find out, the race of any of them. Having determined that there were no measurable differences in those factors qualifying for promotion the fifteen trainees who had passed the examination, Inglis decided to make the final selection for the ten available positions using seniority as the determining factor. Sessions, who had only recently been hired by the hospital and, therefore, had the least seniority, was not selected, but he remained in the hospital's employ. The other six trainees not selected for Ad. Tech. II positions were white.

The announcement of the final selection of ten trainees for the Ad. Tech. II positions was made in December, 1977. That same month Sessions timely filed a discrimination charge with the Equal Employment Opportunity Commission [EEOC]. On November 13, 1978, he received a letter from the Department of Justice informing him of his right to file suit during the ninety-day period following receipt of the notice. Within ninety days of his receipt of the right-to-sue letter, he brought this action against the hospital alleging a violation of Section 1981 and seeking damages and injunctive relief. Seven months later the district court granted Sessions' motion for leave to file an amended complaint asserting a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in addition to the Section 1981 claim.

The hospital moved to dismiss the Section 1981 claim, contending that it was barred by the eleventh amendment, as well as the Title VII claim, contending that it was untimely filed. The district court denied the motion to dismiss, holding that the eleventh amendment did not require dismissal of the Section 1981 claim but affected only the type of relief available, and that the Title VII claim was timely filed because the amendment related back to the date of filing the original complaint.

Having found as a fact that the final selection was made on the basis of seniority because "there were no measurable differences in those factors qualifying the trainees for promotion," the trial court concluded as a matter of law that Sessions "was not promoted because he was found to be not as qualified for the position of Administrative Technician II as the ten selected...." Sessions attacks these as materially contradictory.

We conclude that the eleventh amendment barred the Section 1981 claim against the hospital, a state entity, in federal court. Despite the eleventh amendment bar to the Section 1981 claim asserted in the original complaint, we hold that the amended complaint asserting the Title VII claim relates back to the date of filing the original complaint, thus making the Title VII claim timely filed. Employing the shuttle-cock analysis required by the jurisprudence, we also hold that, while Sessions established a prima facie case of discrimination under

Title VII, the charge was adequately rebutted by the hospital and Sessions failed to prove that the legitimate, nondiscriminatory reason articulated by the employer for Sessions' nonpromotion was pretextual.

## II.

■ Whether an entity is an arm of the state partaking of the state's eleventh amendment immunity turns on its function and characteristics as determined by state law. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471, 479 (1977); *Gay Student Services v. Texas A&M University,* 612 F.2d 160, 164–65 (5th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Goss v. San Jacinto Junior College,* 588 F.2d 96, 98, *modified on rehearing,* 595 F.2d 1119 (5th Cir. 1979). *See generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3524, at 88–89 (1975). The trial court found that Rusk State Hospital is a state institution under the exclusive control of the Texas Department of. Mental Health and Mental Retardation. *See* Tex.Rev.Civ.Stat. article 5547–202, § 2.01. That finding is not contested on appeal. Therefore, we conclude that Rusk State Hospital is an arm of the state for eleventh amendment purposes.

■ In *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978) (per curiam), the Supreme Court held that, absent an express waiver by the state of its eleventh amendment immunity, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), neither the state nor its agencies may be sued for injunctive relief in federal court, although injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.

714 (1908). An award by a federal court of retrospective relief, *i. e.,* damages, payable from the state treasury, is prohibited by the eleventh amendment even though the suit names a state official as the defendant. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *Alabama v. Pugh* stresses the continuing significance of the distinction between suits against the state or an arm of the state and those against state officials even in actions seeking prospective or injunctive relief. *See Spicer v. Hilton,* 618 F.2d 232, 237 (3d Cir. 1980).

■ However, the eleventh amendment is necessarily limited by the enforcement provisions of Section five of the fourteenth amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Therefore, Congress had power to authorize suits against state employers by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Unlike Title VII, Section 1981 contains no congressional waiver of the state's eleventh amendment immunity. This indicates that Congress· did not intend by the general language of the Civil Rights Act of 1871 to invoke its fourteenth amendment power. *Quern v. Jordan,* 440 U.S. at 342, 99 S.Ct. at 1146, 59 L.Ed.2d at 367 (1979); *Edelman v. Jordan,* 415 U.S. at 675–77, 94 S.Ct. at 1362, 39 L.Ed.2d at 679 (1974). Therefore, the district court erroneously denied Rusk State Hospital's motion to dismiss the Section 1981 claim.

## III.

■ A Title VII claim must be filed within ninety days of receipt of the right-to-sue notice. *See* 42 U.S.C. § 2000e–5(f). Action within this Title VII time period is not a prerequisite to a federal court's jurisdiction. *See Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 591 n.14 (5th Cir. 1981) (en banc) (case involving the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*); *Oaxaca v. Roscoe,* 641 F.2d 386 (5th Cir. 1981). Compliance

with the Title VII time period for filing a charge with the EEOC is a statutory requirement for presentation of the claim, and failure to do so admits a defense analogous to a statute of limitations. *Oaxaca v. Roscoe*, 641 F.2d at 390. After the right-to-sue letter is issued, the timeliness of the suit in federal court does not involve the court's jurisdiction but whether the litigant has fulfilled the statutory conditions.

■ Sessions' Title VII court claim can be considered timely filed only if the amended complaint asserting it relates back to the date of filing the original complaint which, as we have pointed out, alleged solely a violation of Section 1981. In *Caldwell v. Martin Marietta Corp.*, 632 F.2d 1184 (5th Cir. 1980), we held that a Title VII claim against a private employer asserted in an amended complaint related back to the date of filing the original complaint alleging a claim under Section 1981 even though the Section 1981 claim was time-barred when filed. Fed.R.Civ.P. 15(c). We conclude that, by analogous reasoning, the relation-back doctrine makes a Title VII claim against a state employer timely despite the fact that the Section 1981 claim was barred by the eleventh amendment if both claims assert in essence the same charge of racial discrimination.[1]

■ A complaint that is defective because it does not allege a claim within the subject matter jurisdiction of a federal court may be amended to state a different claim over which the federal court has jurisdiction. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1159–60 (5th Cir. 1981). *See generally* 3 Moore's Federal Practice ¶ 15.09 (2d ed. 1980). If the claim asserted in the amendment arises out of the conduct or occurrence set forth in the original complaint, the amendment is given retroactive effect to the date the original complaint was filed. Fed.R.Civ.P. 15(c). So long as the Title VII claim is based on the discrimination originally charged in the complaint, allowing it to relate back to the date of filing the Section 1981 claim works no hardship on the defendant for the original complaint furnished adequate notice of the nature of the suit. Here the Title VII and Section 1981 claims were based on identical facts and identical allegations of discrimination. Therefore, we hold that the Title VII claim was timely filed and we turn to the merits of that claim.

## IV.

■ Measured by the criteria formulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973), Sessions established a prima facie case under Title VII. He is a member of a minority group who applied for and was admittedly qualified for promotion. Despite his qualifications, he was rejected and the promotions went to white trainees. The superintendent did not make the selection on the basis that those denied promotion were less qualified. He considered no criterion other than seniority.

■ The burden then shifts to the employer to rebut the presumption of discrimination created by the demonstration of a prima facie case. This burden of proof can be satisfied if the employer clearly sets forth a legitimate, nondiscriminatory reason for the plaintiff's rejection. *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The testimony of the hospital superintendent establishes that the final selection was based on seniority, a legitimate and nondiscriminatory factor. Hospital management might choose, in the exercise of its

---

1. The Supreme Court has held that the eleventh amendment defense "sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court" but can be raised for the first time on appeal. *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662, 681. *See Dagnall v. Gegenheimer*, 645 F.2d 2 (5th Cir. 1981) (on petition for rehearing); *Jagnandan v. Giles*, 538 F.2d 1166, 1172–73 (5th Cir. 1976), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); *Shashoua, M. D. v. Quern*, 612 F.2d 282, 284 (7th Cir. 1980). *See generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3524, at 79–80 (1975).

prerogatives, to train a greater number of applicants than the number of available positions. Had more of the previously employed trainees not successfully completed the program, or had some of them failed the examination, or had more positions been authorized, additional persons would apparently have been promoted.

■■■ Title VII does not require an employer to accord a preference to a minority applicant over an equally qualified nonminority applicant. *Texas Department of Community Affairs v. Burdine,* —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The hospital-employer in this case sufficiently satisfied its burden of proof on rebuttal. *Id.*

■■■ Once the defendant carries the burden of rebutting the plaintiff's prima facie case, the plaintiff has the opportunity to demonstrate that the proffered reason for rejection is pretextual. "This burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Texas Department of Community Affairs v. Burdine,* 101 S.Ct. at 1095. Pretext may be established by showing that the employer's explanation is unworthy of belief. *Id.*

Sessions claims that statistical evidence showing that black persons constitute 17.3% of the hospital's employees, but only 2.8% of its supervisory and administrative personnel establishes that blacks were excluded from administrative positions and, therefore, that the employer's asserted reason for rejecting Sessions was pretextual. This is a non-sequitur. The statistical evidence buttresses Sessions' prima facie case, but it does not demonstrate that the reason advanced for failure to promote him lacked either substance or credibility.

Finally, Sessions argues that the hospital may not properly rely on the fact that the superintendent who made the final selection and denied him a promotion was unaware of the race of the trainees because the hospital had in effect an affirmative action plan at that time. Details of that plan are not in the record. Even if they were, however, Title VII does not require compliance with plans that go beyond the statutory mandate. As we have already pointed out, the statute does not enjoin preferential consideration of minorities. *Texas Department of Community Affairs v. Burdine,* 101 S.Ct. at 1096; *United Steelworkers v. Weber,* 443 U.S. 193, 205–206, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 481, 490 (1979). *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957, 967 (1978) (Title VII does not require employer to maximize hiring of minorities).

The district court's findings of fact and conclusions of law do not clearly delineate the various steps in the proof of a Title VII claim. Although the opinion might have been worded differently, it is apparent that the trial judge examined the pertinent facts and ultimately applied the proper burden of proof in finding no discrimination. The terms "prima facie case" and "pretext" are not magical and their absence from the district court's opinion is not fatal error. *Merriweather v. Hercules, Inc.,* 631 F.2d 1161, 1165–66 (5th Cir. 1980). Considered most favorably to Sessions, the district court's opinion reflects a possible inconsistency between the findings of fact and the conclusions of law. Even if we assume these to be irreconcilable, the record as a whole establishes that the trial judge correctly found that Sessions had not been the victim of discrimination and that application of the proper burden of proof under the three-part shifting analysis would require the same decision that he reached.

For these reasons, the judgment is AFFIRMED.