Diane Mae **KOMPARA**, Plaintiff,

v.

**BOARD OF REGENTS OF THE STATE UNIVERSITY and COMMUNITY COLLEGE SYSTEM of TENNESSEE, et al.,** Defendants.

No. 82–3346.

United States District Court, M. D. Tennessee, Nashville Division.

Sept. 22, 1982.

Charles Hampton White and William Prentice Cooper, Nashville, Tenn., for plaintiff.

Susan Short-Kelly, Asst. Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiff's complaint arises under the fourteenth amendment and 42 U.S.C. § 1983, alleging deprivation of rights secured by the laws of the United States and the due process and equal protection clauses of the fourteenth amendment. Specifically, plaintiff complains that defendants have denied her tenure as a member of the faculty at East Tennessee State University [ETSU], thereby violating the due process and equal protection guarantees of the fourteenth amendment. Defendants are the Board of Regents of the State University and Community College System of the State of Tennessee [Board of Regents]; Roy S. Nicks, Chancellor of the State University and Community College System of Tennessee; ETSU; and ETSU's President, Ronald E. Beller. Plaintiff seeks declaratory and injunctive relief, including reinstatement, and also seeks back pay.

In her complaint, plaintiff alleges that she served as a member of the ETSU faculty in the Department of Social Work continuously from the school year 1970–71 through the school year 1976–77. Upon return from a one-year leave of absence, plaintiff contends that she returned to the faculty with academic rank. Plaintiff's complaint alleges that she submitted a written application to ETSU on December 5, 1975, for an award of tenure and that this application was rejected on June 4, 1976. As to these events, plaintiff alleges that the denial of tenure in 1976 violated Sections 49–1412 and 49–3255, Tennessee Code Annotated, and was contrary to the then-operative regulations on tenure as adopted by the Board of Regents. The complaint further alleges that defendant Nicks retroactively applied new regulations to plaintiff's tenure application, thus violating her due process and equal protection rights.

Plaintiff applied a second time for tenure as a member of ETSU's faculty on November 29, 1978. On June 29, 1979, the Board of Regents conferred tenure on her, contingent upon her receiving a terminal degree, but plaintiff alleges that the Board of Re-

gents has since that date continuously intended to deprive her of tenure. Further, plaintiff alleges that defendant Beller wrote her a letter on April 7, 1981, advising her that she would be terminated as a faculty member unless she earned a terminal degree by the end of the 1981–82 school year. According to plaintiff, this letter violated her constitutional rights in two ways. First, plaintiff alleges that by conditioning her position on the faculty on the receipt of a terminal degree prior to the end of the 1981–82 school year, defendants acted to deprive her of her property without due process of law. Second, plaintiff alleges that the requirement stated in the April 7, 1981, letter violated her rights to equal protection of the law because defendants allegedly permitted male members of the faculty to attain tenured positions and continue teaching without first receiving terminal degrees in any specified time.

Defendants have moved to dismiss this complaint or, in the alternative for summary judgment, on three grounds: (1) the complaint was not filed within the statute of limitations; (2) the eleventh amendment bars this proceeding against these defendants, and (3) defendants ETSU and the Board of Regents are not "persons" for purposes of section 1983 and therefore plaintiff has failed to state a cause of action as to these defendants.

### Statute of Limitations

■ Defendants assert that plaintiff's action is barred by the statute of limitations. In this federal civil rights action, the Court must look to state law for the applicable statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Tennessee Code Annotated § 28–3–104 provides a one-year statute of limitations for civil actions brought under the civil rights statute. The one-year statute of limitations also applies to actions brought under the fourteenth amendment. *Wright v. Tennessee,* 613 F.2d 647 (6th Cir. 1980).

Defendants contend that the statute of limitations was triggered on July 29, 1979,

when plaintiff was awarded tenure contingent upon her receiving a terminal degree. Plaintiff, on the other hand, points to the letter from ETSU's President dated April 7, 1981, advising plaintiff that she would be terminated unless she earned her terminal degree by the end of the 1981–82 school year. Plaintiff contends that she in fact met the one-year statute of limitations by filing this suit on April 6, 1982.

■ After looking at the facts as stated by the parties, upon which there is no major disagreement, and studying the pleadings contained in plaintiff's complaint, the Court concludes that plaintiff's claims are timely. Defendants attempt to dismiss the April 7, 1981, letter as "simply a consequence of the alleged violation of plaintiff's rights which occurred in 1979." Defendants' Memorandum in Support of Motion to Dismiss at p. 5. Although it is true that plaintiff's contingent tenure award was made in June of 1979, plaintiff was not notified until April 7, 1981, that she was required to earn her terminal degree within a specific time frame. Plaintiff alleges not only that some male faculty members are granted tenure without similar degrees, she also complains that male faculty members who do work towards terminal degrees are not placed under similar deadlines. Thus, the information contained in the April 7 letter represents a separate act by defendants and cannot be regarded as just a consequence of decisions made in 1979.

The Supreme Court has made it clear that the limitations period commences at the time of the alleged violation, not the time at which the consequences of the acts become most painful. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, 440 (1980). Furthermore, mere continuity of employment, without more, is insufficient to prolong the life of a cause of action. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). This ruling is not inconsistent with these guidelines because here there is a specific act by defendant which arose within the statutory period. Thus, plaintiff's action is not barred by the statute of limitations.

### Eleventh Amendment and Section 1983 Issues

The parties have addressed the eleventh amendment and the scope of a "person" under section 1983 as separate grounds. However, at least in terms of the defendants named herein, the two questions are so closely interrelated that they must be confronted simultaneously.

■ The eleventh amendment in its literal terms provides that one of the United States may not be sued in federal court by a citizen of a different state. The Supreme Court subsequently decided that the amendment also barred federal suits against a state by its own citizens, *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). However, under the legal fiction created in the landmark decision of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a federal court, consistent with the eleventh amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury.

■■ Apart from the legal fiction of *Ex Parte Young*, two other inroads upon eleventh amendment immunity have evolved from the cases. First, a state may waive its immunity. *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Second, pursuant to the fifth section of the fourteenth amendment, Congress can pass laws to enforce the substantive provisions of the fourteenth amendment and authorize federal suits against states. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Title VII action not barred by eleventh amendment). This second limit on state immunity brings us to 42 U.S.C. § 1983, because Congress had the power to include states as "persons" for purposes of section 1983, if it so desired.

The definition of "person" has not been entirely static, a factor which has led in part to this dispute. In 1978, the Supreme Court overruled long-standing precedent that cities and municipal corporations were not "persons" under the statute. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). One of the questions to be decided herein is whether, after *Monell*, state-supported universities are "persons" for purposes of section 1983. Before turning to the specific argument of the parties, one further development in this area of the law is worth noting. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the eleventh amendment. Thus, *Edelman* limits the remedies in an action brought in a *Ex Parte Young* type case.

Plaintiff argues that the *Monell* rationale also applies to the defendants herein, relying heavily on *Gay Student Services v. Texas A & M University*, 612 F.2d 160 (5th Cir. 1980) and *Harris v. Arizona Board of Regents*, 528 F.Supp. 987 (D.Ariz.1981). Plaintiff urges this Court to adopt the reasoning used in *Harris*, where the District Court for the District of Arizona considered whether the Arizona Board of Regents and Arizona State University were "persons" for section 1983 purposes. The court in *Harris* used the following analysis:

> The language of § 1983 is broad and sweeping. *Owen v. City of Independence*, 445 U.S. 622, 635–36, 100 S.Ct. 1398 [1407–1408], 63 L.Ed.2d 673 (1980); *Sellars v. Procunier*, 641 F.2d 1295, 1298 (9th Cir. 1981). Since there would appear to be no analytical difference in the operation of the Board and the governing bodies found to be "persons" in *Monell*, the Court determines that the Board is a "person" for § 1983 purposes. *See Gay Student Services v. Texas A & M Univ.*, 612 F.2d 160, 163–64 (5th Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (university held to be "person"); *Tayyari v. New Mexico State Univ.*, 495 F.Supp. 1365, 1370 (D.N.M. 1980).

The Court is aware that the Supreme Court opinion in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 39 L.Ed.2d 358 (1979) has been interpreted as holding

that States and state agencies are not § 1983 "persons." *See e.g., Quern v. Jordan, supra,* 440 U.S. at 350, 99 S.Ct. at 1150 (Brennan, J., concurring); *O'Connor v. State of Nevada,* 507 F.Supp. 546, 551 (D.Nev.1981); Schnapper, *Civil Rights Litigation After Monell,* 79 Colum.L.Rev. 213, 254 (1979). This Court is not persuaded that such an interpretation is supported by the language of the opinion. In deciding that § 1983 was not intended to abrogate the Eleventh Amendment sovereign immunity of the States, the *Quern* Court specifically stated that its decision did not "render § 1983 meaningless insofar as States are concerned. See *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." 440 U.S. at 345, 99 S.Ct. at 1147. In light of this passage this Court is unable to agree that States do not meet the threshold "person" requirement of § 1983, since such a construction would indeed render § 1983 "meaningless" as to them. Rather, the plain inference to be drawn from the Court's statement and reference to *Ex parte Young* is that States and state agencies are not removed from the class of § 1983 "persons" simply because they may be able to raise an Eleventh Amendment defense. *See Gay Student Services v. Texas A & M University, supra,* 612 F.2d at 163–64 n.3. The assessment of an entity's status under § 1983 is analytically distinct from the inquiry into the entity's status under the Eleventh Amendment. *See id.* at 163–65.

Since the Board is a § 1983 "person," and since the issuance of the terminal contract represents a matter of official action by the Board, *Monell v. Department of Social Services, supra,* 436 U.S. at 694, 98 S.Ct. at 2037, it is clear that the complaint states a cause of action under § 1983 against the Board.

528 F.Supp. 987 (1981).

Plaintiff apparently would have this Court adopt this portion of the *Harris* opinion without also following the ultimate holding in *Harris* that the Board of Regents could not be sued because it did not waive its eleventh amendment immunity. *Id.* at 995. In any event, this Court respectfully disagrees with the analysis in *Harris* pertaining to the definition of section 1983 "persons."

First of all, any attempt to expand *Monell* to other entities requires close scrutiny. The holding in *Monell* was, of course, limited to "local government units which are not part of the State for Eleventh Amendment purposes." 436 U.S. at 690 n.54, 98 S.Ct. 2018, at 2035 n. 54, 56 L.Ed.2d at 635. *See also, Quern v. Jordan,* 440 U.S. at 340, 99 S.Ct. 1139 at 1144, 59 L.Ed.2d at 366 (1979) (repeating that *Monell* holding limited to local government units).

Moreover, the analysis urged upon this Court by plaintiff fails to take into account two Supreme Court decisions subsequent to *Monell.* In *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the Supreme Court summarily held that the State of Alabama could not be joined in a claim brought under section 1983 without violating the eleventh amendment. The Court also ordered the Alabama Board of Corrections dismissed from the suit. In *Quern v. Jordan, supra,* the Supreme Court shed some light on the per curiam opinion in *Alabama v. Pugh,* explaining that a state cannot, consistent with the eleventh amendment, be named in a section 1983 suit even where claims are raised under the eighth and fourteenth amendments. The Court stressed that a clear showing of congressional purpose is required to abrogate eleventh amendment immunity, stating:

> Given the importance of the States' traditional sovereign immunity, if in fact the Members of the 42d Congress believed that § 1 of the 1871 Act overrode that immunity, surely there would have been lengthy debate on this point and it would have been paraded out by the opponents of the Act along with the other evils that they thought would result from the Act. Instead, § 1 passed with only limited debate and not one Member of Congress mentioned the Eleventh Amendment or the direct financial consequences to the States of enacting § 1. We can only conclude that this silence on the matter is

itself a significant indication of the legislative intent of § 1.

440 U.S. at 343, 99 S.Ct. 1139 at 1146, 59 L.Ed.2d at 368.

In view of the opinions in *Alabama v. Pugh* and *Quern v. Jordan,* this Court cannot agree with plaintiff that there is no analytical difference in the Board of Regents or ETSU and the governing bodies found in *Monell* to be "persons" under section 1983. The difference between the *Monell* decision and this case is the eleventh amendment. In presenting arguments similar to those used by Justice Brennan in a concerning opinion in *Quern v. Jordan,* plaintiff insists that reliance on *Alabama v. Pugh* for purposes of this analysis is "awkward." Suffice it to say that this Court feels compelled to give greater weight to the majority opinion in *Quern* which had the votes of seven Justices than to Justice Brennan's concurring opinion, speaking only for himself and Justice Marshall. The Court recognizes that much of the *Quern* opinion relied upon herein is only dicta and consequently there is some room for disagreement, as evidenced by the *Harris* opinion. However, this Court is convinced that *Quern v. Jordan* effectively rebuts plaintiff's theory. 42 U.S.C. § 1983 should not be regarded as an express Congressional abolition of eleventh amendment immunity. That statute can be used to vindicate virtually any federal claim, so to allow suits against the states under section 1983 would let the exception engulf the rule; the eleventh amendment would be rendered a nullity.

The statement in *Quern* that "Nor does our reaffirmance of Edelman render § 1983 meaningless insofar as States are concerned. See *Ex Parte Young...* " cannot be interpreted, as plaintiff asserts, to mean that states are section 1983 "persons." Rather, the citation to *Ex Parte Young* clearly references the fact that individual officials may be named as defendants in section 1983 actions. This applies to the case at bar where the individual defendants shall not be dismissed. Plaintiff, however, contends that the state may also be sued for equitable relief under *Ex Parte Young.* This is a fundamental misstatement of the well known holding of *Ex Parte Young* that the State Attorney General could be sued in federal court but the state could not. Frankly, the court is surprised by plaintiff's claim that the state itself can be a defendant in a *Ex Parte Young* type case. If the state could be sued directly, there would be no need for the "legal fiction" of *Ex Parte Young* which allows suits against state officials.

Thus, as long as the Board and ETSU are viewed as "arms of the state," the eleventh amendment acts to preclude their being named as defendants in a section 1983 action. Under existing case law, ETSU and the Board are state agencies for eleventh amendment purposes. In *Gross v. University of Tennessee,* 620 F.2d 109 (1980), the Sixth Circuit affirmed a finding that the University of Tennessee was not a "person" under section 1983 and that there had been no waiver of eleventh amendment immunity. See also *Martin v. University of Louisville,* 541 F.2d 1171 (6th Cir. 1976); *Long v. Richardson,* 525 F.2d 74 (6th Cir. 1975). Plaintiff is also well aware that this Court had already ruled that the Board of Regents and Austin Peay State University were not "persons" under section 1983. *Student Coalition for Gay Rights v. Austin Peay State University,* 477 F.Supp. 1267, 1268 (M.D.Tenn.1979). For the reasons outlined above, the Court rejects plaintiff's argument that *Monell* undermines the authority of these cases. ETSU and the Board of Regents are arms of the state for eleventh amendment purposes.

Plaintiff does not argue that any of the named defendants have waived eleventh amendment immunity. Therefore, the Court concludes that defendants ETSU and the Board of Regents must be dismissed. The individual defendants, however, are not immune to this suit in federal court. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Any relief against these individuals, however, may not come directly from funds in the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

 

 Finally, plaintiff contends that even if the Board of Regents and ETSU are not section 1983 "persons," she is still entitled to redress pursuant to 28 U.S.C. § 1331 for violations of the fourteenth amendment. Plaintiff does not, however, proffer any explanation as to why the eleventh amendment does not apply here as well, so plaintiff's effort to rely on fourteenth amendment grounds does not require a different result as to the status of ETSU and the Board of Regents. Consequently, defendants ETSU and Board of Regents shall be dismissed from this action. Plaintiff's complaint against the individual defendants shall proceed.