**L. Lea NABKE, Plaintiff,**

v.

**U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

No. G 79–678 CA 1.

United States District Court, W. D. Michigan, S. D.

March 11, 1981.

L. Lea Nabke, in pro. per.

Robert C. Greene, U. S. Atty., Grand Rapids, Mich., for H.U.D.

Thomas F. Koernke, Grand Rapids, Mich., for Legal Aid of Western Michigan.

Janice M. Fuller, Asst. City Atty., Grand Rapids, Mich., for City of Grand Rapids.

Mario Manuel Lewis, Legal Services, Washington, D. C. and Dennis Kolenda, Grand Rapids, Mich., for Legal Services.

## OPINION ON MOTIONS TO DISMISS

MILES, Chief Judge.

The plaintiff applied for a home repair loan under a community development block grant program, but her application was denied in February, 1979, by defendant City of Grand Rapids Department of Housing and Community Development. The plaintiff's complaints to defendant United States Department of Housing and Urban Development brought no change in her situation. She brought this suit against these two defendants asking damages in the amount of $150,000 charging discrimination and misuse of federal funds in violation of the Housing and Community Development Act of 1974, as amended by the Housing and Community Development Act of 1977, 42 U.S.C. § 5301 *et seq.*, and the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

Defendant also sought assistance from defendant Legal Aid of Western Michigan, Inc., which declined to assist her. Complaints to defendant Legal Services, Inc. brought no change in the situation, and defendant brought this suit against these two defendants for damages in the amount of $150,000, again alleging discrimination and misuse of federal funds, in violation of the Economic Opportunity Act, 42 U.S.C. § 2701 *et seq.*, the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Legal Services Act, 42 U.S.C. § 2996 et seq., and the regulations promulgated thereunder in 45 C.F.R. § 1601 *et seq.*

Pursuant to Fed.R.Civ.P. 12(b)(6), all four defendants moved to dismiss for failure to state a claim on which relief can be granted. Their arguments are essentially that the statutes in question provide no private right of action to the plaintiff, and that she

has failed, in the alternative, to plead a claim if there are private rights of action. A hearing was held on these motions on February 17, 1981.

 While the complaint is somewhat unclear as to the exact basis of the alleged discrimination, a court is obligated to take the complaint and all fair inferences as true, and dismiss only if there is no set of facts which the plaintiff might prove in support of her claims. The court is also obligated to construe the pleadings of a pro se plaintiff even more liberally. At the hearing, the plaintiff, a white female, was asked what the basis of the discrimination was, whether it was race, color, national origin, sex, age, or something else. Her response indicated that it was all of those, that she had been discriminated against in every possible way. Accordingly, the complaint must be taken, under the circumstances, to allege discrimination sufficient to violate the statutes in question, and this court must decide whether those statutes authorize or imply a private right of action. Only if they do not may the complaint be dismissed.

None of the statutes in question explicitly authorizes a private cause of action. Rather, the statutes set up programs of federal grants, in one case through the Department of Housing and Urban Development to local community development programs, in the other through the Legal Services Corporation to local legal aid organizations. Each statute contains detailed provisions for administrative proceedings against the local agency by the granting agency, the ultimate penalty being the revocation of funding.

Whether the plaintiff has an implied right of action under these same statutes must be determined under the four pronged test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff?

Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy, or to deny one? . . .

Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And, finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088. The final prong of the test is no bar in this case. The remaining parts of the test are best discussed with regard to each statute individually.

### The Economic Opportunity Act

This court is convinced that the plaintiff cited the Economic Opportunity Act, 42 U.S.C. §§ 2701 through 2995 under the mistaken impression that they were a part of the Legal Services Act, 42 U.S.C. § 2996. Nothing in the former Act would seem to apply to the plaintiff's claims against any of the defendants.

### The Legal Services Act

The Legal Services Act, 42 U.S.C. § 2996, establishes the Legal Services Corporation, which in turn funds local legal aid programs, including Legal Aid of Western Michigan, Inc., out of annual appropriations by Congress. Foreseeing that demand for legal services by the poor would exceed the resources allocated, Congress provided in § 2996F of the Act for the establishment of guidelines and priorities in the use of these resources by local legal aid chapters. Pursuant to the authority granted in § 2996g(e), regulations were promulgated which appear in 45 C.F.R. § 1600 *et seq.* Section 1620 of the regulations establishes a system for the priority allocation of resources among competing claims. Section 1621 mandates the establishment by local legal aid chapters of an administrative client grievance procedure meeting minimum requirements. Section 1624 prohibits discrimination on the basis of handicap.

■ It is obvious that both Congress and the Legal Services Corporation foresaw that not every applicant could receive assistance from legal aid. With regard to the first prong of the *Cort v. Ash* test, the plaintiff is one of a class of possible beneficiaries for whose benefit the statute was enacted, but it does not follow that there is a federal right to such assistance where the priority allocation of inadequate resources is so plainly a part of the statutory scheme.

Second, the legislative history of the Act shows congressional intent to deny such a remedy. A section of the proposed act explicitly providing a private remedy was deleted in committee in both houses, *see* S.Rep.No. 93–475, 93rd Cong., 1st Sess. (1973); H.Rep.No.93–247, 93rd Cong., 1st Sess. (1973), reprinted in [1974] U.S.Code Cong. & Ad.News 3872, 3894–6 (minority views of Rep. Landgrebe). Efforts to amend the bill on the floor of the House to reinsert the private remedy provision were defeated, 119 Cong.Rec. 20725–20729 (1973).

Third, the implication of a private remedy would undercut the purpose of the Act, which is to deliver maximum legal services to the poor on a priority basis with limited funds. The necessity of defending lawsuits and paying judgments would rechannel those funds and services away from this intended purpose.

The factors of the *Cort v. Ash* test compel the conclusion that there is no private right of action under 42 U.S.C. § 2996 against defendants Legal Services Corporation and Legal Aid of Western Michigan, Inc.

### *The Housing and Community Development Act*

The Housing and Community Development Act, 42 U.S.C. § 5301, *et seq.*, authorizes the Department of Housing and Urban Development to fund by block grant local community development programs which meet the requirements of the Act. The Act contains no explicit authorization of a private remedy, but it does contain a specific antidiscrimination clause:

No person in the United States shall, on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity funded in whole or in part with funds made available under this chapter. 42 U.S.C. § 5309(a). Subsection 'B' provides for enforcement of subsection 'A' by the Secretary of Housing and Urban Development, who may work through the state governor, refer the matter to the Attorney General for civil action, or take other action including the termination or reduction of funding.

The language of § 5309 is strikingly similar to the language of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court held the latter section to imply a private right of action to a woman denied admission to medical school on account of her sex. However, that holding depended largely upon the Court's finding that Congress intended to imply such a right by enacting language similar to that in the Civil Rights Act of 1964, which was then thought to imply such a right. Section 5309 was passed in 1974, prior to the decision in *Cort v. Ash.*

■ First, given the language of the statute, the opinion in *Cannon* compels the conclusion that the plaintiff is one of the class for whose benefit the statute was enacted, as a possible recipient of a home repair loan. Second, nothing in the legislative history suggests any congressional intent to authorize or deny a private remedy, as the legislative history doesn't even mention the antidiscrimination clause. Absent is the discussion and debate of private remedies on which the court, in *Cannon*, based a finding of congressional intent. The section was not modified in 1977, after *Cort v. Ash*, but little can be devined from this fact. As the Court stated in *Cort*, "... it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such a cause of action would be controlling." 422 U.S. at 82, 95 S.Ct. at 2090. In the instant case, this prong of the analysis is inconclusive as to

legislative intent, despite the similarity of § 5309 to Title IX. Third a *damage* remedy would be inconsistent with the purpose of the program in that it would divert program resources from the purpose of the Act, which is to rebuild and rehabilitate decaying urban areas. Even the cost of defending a lawsuit might easily exceed the amount of a typical rehabilitation loan.

This case does not present "the atypical situation in which *all* of the circumstances that the Court has previously identified as supportive of an implied remedy are present." *Cannon,* 441 U.S. at 717, 99 S.Ct. at 1968. Therefore, the Housing and Community Development Act, 42 U.S.C. § 5301 *et seq.,* implies no private remedy for the plaintiff against defendants United States Department of Housing and Urban Development and City of Grand Rapids.

### The Civil Rights Act of 1964

The Civil Rights Act of 1964 contains the following prohibition against discrimination in federally funded programs:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000D. The question in this case is whether this statute implies a private damage remedy in favor of the plaintiff. The section has been much discussed but rarely definitively construed by the courts, most recently in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The Court based its holding in that case, that Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 implied a private remedy, in part on a finding that Congress, in 1972, probably assumed that § 2000d implied such a remedy, and adopted similar language in § 1681. But the Court has never actually *held* that § 2000d provides a private remedy. Rather, the Court pointed out that Congress was aware of a number of decisions by lower federal courts implying private rights under § 2000d. In *Bossier Parrish School Board v. Lemon,* 370 F.2d 847 (5th Cir. 1967), *cert. denied* 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350, the Court of Appeals for the Fifth Circuit held that § 2000d provided a private remedy adequate to support a class action seeking a school desegregation order. By 1972, several federal district courts had relied on *Bossier* in holding that § 2000d implied rights of action for declaratory judgment against discrimination in Small Business Administration Loans, *Southern Christian Leadership Conference v. Connolly,* 331 F.Supp. 940 (E.D.Mich.1971); for injunction against the discriminatory location of public housing, in class actions, *Blackshear Residents Organization v. Housing Authority of Austin,* 347 F.Supp. 1138 (W.D.Tex.1972); *Gautreaux v. Chicago Housing Authority,* 265 F.Supp. 582 (N.D. Ill.1967); and for relief against discriminatory membership policies of a private club built with federal loans, *Hawthorne v. Kenbridge Recreation Association,* 341 F.Supp. 1382 (E.D.Va.1972). Class action declaratory and injunctive relief against discriminatory police department promotion practices was upheld in *Afro American Patrolmens League v. Duck,* 503 F.2d 294 (6th Cir. 1974). Other courts have since found an implied remedy of injunctive relief and declaratory judgment under § 2000d, *NAACP v. Medical Center, Inc.,* 599 F.2d 1247 (3rd Cir. 1979). None of these cases, however, have implied a *damage* remedy under the Act.

The Supreme Court also left open the issue whether § 2000d implies a private remedy in *University of California Regents v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Justice Powell wrote,

> We find it unnecessary to resolve the question in the instant case. The question of respondent's right to bring an action under Title VI was neither argued nor decided in either of the courts below, and this court has been hesitant to review questions not addressed below.... We therefore do not address this difficult issue. Similarly, we need not pass upon petitioner's claim that private plaintiffs

under Title VI must exhaust administrative remedies. We assume, only for the purposes of this case, that respondent has a right of action under Title VI.

*Id.* at 283–284, 98 S.Ct. 2744–45. Justices Brennan, Marshall, and Blackmun agreed. Justice Stevens, joined by the Chief Justice and Justices Stewart and Rehnquist, similarly wrote:

Because petitioner questions the availability of a private cause of action for the first time in this Court, the question is not properly before us.

*Id.* at 419, 98 S.Ct. at 2813–14. Only Justice White addressed the issue, and he concluded that Title VI provides no private remedy because, under two of the prongs of the *Cort v. Ash* test, such a remedy

. . . would not be "consistent with the purposes of the underlying legislative scheme" and would be contrary to the legislative intent.

*Id.* at 381, 98 S.Ct. at 2794. Against this background, this court is left free to determine whether Title VI, 42 U.S.C. § 2000d, implies a damage remedy for the plaintiff.

■ First, the plaintiff, a potential beneficiary of two federally funded programs, is one of the broad class indeed which Congress sought to protect by prohibiting discrimination under *any* federally funded program. There is, however, a policy reason against inferring that a remedy follows from this federal right. Section 2000d is different from other more narrowly drawn statutes with similar language under which private rights of action have been implied. The breadth of the statute, encompassing the class of every potential beneficiary of every program funded, in whole or in part, with federal funds would work a massive expansion of the jurisdiction of the federal courts. Such a major expansion is better left to an explicit act of Congress, rather than second guessing the intent of congress by the courts.

Second, there is much in the legislative history of the Act from which the intent to deny a private remedy may be inferred, as Justice White pointed out in *Bakke* through the statements of three legislators:

"Nowhere in this section do you find a comparable right of legal action for a person who feels he has been denied his rights to participate in the benefits of Federal funds. Nowhere. Only those who have been cut off can go to court and present their claim." 110 Cong.Rec. 2467 (1964) (Rep. Gill).

"[A] good case could be made that a remedy is provided for the State or local official who is practicing discrimination, but none is provided for the victim of the discrimination." Id. at 6562 (Sen. Kuchel).

"Parenthetically, while we favored the inclusion of the right to sue on the part of the agency, the State, or the facility which was deprived of Federal funds, we also favored the inclusion of a provision granting the right to sue to the person suffering from discrimination. This was not included in the bill. However, both the Senator from Connecticut and I are grateful that our other suggestions were adopted by the Justice Department." Id., at 7065 (Sen. Keating).

438 U.S. at 385–6 n. 4, 98 S.Ct. at 2797 n. 4. Such an intent to deny a private remedy is controlling, *Cort v. Ash*, 422 U.S. at 82, 95 S.Ct. at 2090.

Third, while a private right of action might deter prohibited discrimination, such a right is inconsistent with the scheme of the act. Detailed administrative procedures, carefully drawn, are provided to deal with discrimination. To permit private plaintiffs to circumvent such procedures by implication of a remedy is inconsistent with the structure and intent of the Act.

Fourth, a federal discrimination claim is not one traditionally left to state law.

This case, unlike *Cannon*, does not present the ". . . atypical situation in which *all* of the circumstances that the Court has previously identified as supportive of an implied remedy are present," *Cannon*, 441 U.S. at 717, 99 S.Ct. at 1968. The controlling factor, intent to deny a remedy, weighs heavily against a private remedy.

Finally, a *damage* remedy presents the weakest case, under the circumstances, for

an implied remedy. The courts which have implied remedies under § 2000d have done so with regard to declaratory and injunctive relief, which directly put an end to the discrimination, but never with respect to damages, which deter discrimination only indirectly. For the courts to imply such a remedy that only indirectly furthers the purposes of so broad an act, where Congress did not provide such a remedy, is not appropriate.

Accordingly, the plaintiff has no implied damage remedy under the Civil Rights Act of 1964, 42 U.S.C. § 2000d, against any of the four defendants.

## ORDER

The motions to dismiss under Fed.R. Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted by defendants United States Department of Housing and Urban Development, City of Grand Rapids, Legal Services Inc., and Legal Aid of Western Michigan, Inc., are granted, and the plaintiff's complaint is dismissed.

IT IS SO ORDERED.