**Mrs. Ernestine A. FULTZ, Pro Se, Plaintiff,**

v.

**NEIGHBORHOOD LEGAL SERVICES, Albert Jones, Asst. Director Mrs. Barbara Smith, Defendants.**

**Civ. A. No. 86–115.**

United States District Court, W.D. Pennsylania.

Jan. 26, 1987.

Ernestine A. Fultz, pro se.

Thomas C. Reed, Rose, Schmidt, Chapman, Duff & Hasley, Pittsburgh, Pa., for defendants.

## OPINION

COHILL, Chief Judge.

Presently before the Court is defendants' motion to dismiss plaintiff's *pro se* complaint which seeks injunctive relief and monetary damages for alleged violations of the civil rights of the plaintiff, Mrs. Ernestine A. Fultz. Because matters outside the pleadings have been presented to the Court and considered by it, we will construe defendants' motion to dismiss as one for summary judgment. Fed.R.Civ.P. 12(b)(6), 56; *Sayers v. Automated Transportation, Inc.*, 645 F.Supp. 194, 196 (W.D.Pa.1986). We conclude that plaintiff has been given a reasonable opportunity to produce evidentiary materials and note that the discovery period has closed in the above-captioned case; thus, plaintiff will not be prejudiced by having the instant motion decided as one for summary judgment.[1]

---

1. We are aware of those decisions which require a strict notice requirement to the parties before a Rule 12(b)(6) motion can be transformed into a Rule 56 motion. *See, e.g., Griffin v. Wainwright* 772 F.2d 822, 825 (11th Cir.1985). *But see, e.g., Moody v. Town of Weymouth*, 805 F.2d

Mrs. Fultz's complaint, while somewhat unclear as to the exact basis of the alleged discrimination, alleges a violation of: 1) her civil rights under 42 U.S.C. § 1983; 2) the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010; 3) due process and equal protection under the fourteenth amendment; and 4) Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. Although plaintiff has not specifically cited the Legal Services Corporation Act, 42 U.S.C. §§ 2996–2996*l*, it appears that she relies upon that Act as a source of her claim. Mrs. Fultz seeks compensatory and injunctive relief stemming from the denial of legal representation by the Neighborhood Legal Services Association, Inc. (hereinafter "NLSA").

*Facts*

In June of 1985, plaintiff requested NLSA to provide her with free legal services relative to an incident involving Pittsburgh Police Officers. While Mrs. Fultz has not specified the particular type of legal services she wanted, it appears that she sought assistance in a tort and/or criminal action against the Pittsburgh Police.[2] *See* Affidavit of Albert J. Jones. Mrs. Fultz went to NLSA's North Side office and was interviewed by Barbara Smith, a paralegal employed by NLSA. After discussing the nature of plaintiff's legal problems, Ms. Smith believed that plaintiff's problem was primarily criminal in nature and therefore not the type of case which NLSA's Board had authorized her office to handle. *See* Affidavit of Barbara Smith.

NLSA has a policy, set by its Board of Directors, that its lawyers and paralegals will not provide services in criminal cases, or in plaintiff-tort cases where a privately retained lawyer could obtain a contingent fee from any recovery. We note that plaintiff concedes that her claim was fee-generating in a document filed with this Court on April 4, 1986. *See* Plaintiff's Motion In Response to Defendants' Motion to Dismiss, ¶ K.

Approximately 49.8% of NLSA's funds were obtained from Legal Services Corporation (hereinafter referred to as "LSC"), and 47.6% of its funds were state/federal funds obtained by entering into a contract with Pennsylvania Legal Services Corporation (hereinafter "PLSC"). Defendants' Brief in Support of Motion to Dismiss at 3–4. NLSA may not use any funds supplied by LSC and PLSC to handle those legal matters enumerated in 42 U.S.C. § 2996f, which is discussed *infra*. Despite being free to seek other funds to handle cases which it cannot handle with LSC funds, NLSA has elected not to handle every type of case, and also to designate certain cases as "priority cases." NLSA lacks sufficient resources to handle all legal matters brought to its attention; thus, it must limit its services.

After determining that NLSA could not handle plaintiff's case, Ms. Smith advised Mrs. Fultz to contact the office of William Buchko, Esquire, who coordinates referrals from NLSA to a *pro bono* lawyer's panel in situations where NLSA cannot provide legal assistance. *See* Affidavit of Barbara Smith. As a result of plaintiff's dissatisfaction with Ms. Smith's explanation of the types of cases NLSA is authorized to handle and the difficulty plaintiff encountered in attempting to contact the *pro bono* lawyers panel, Mrs. Fultz requested Assistant Director Albert Jones to conduct a review of NLSA's action in her case.

30, 31–32 (1st Cir.1986) (notice not required where opponent has received evidence, has had opportunity to respond to it, and has not contradicted its accuracy). However, in the instant case, plaintiff initially attached several letters to her complaint and thus "opened the door" to including matters outside the pleadings. Moreover, we feel compelled to treat the present motion as one for summary judgment since plaintiff's theories of relief are not easily discernible from her *pro se* complaint and subsequent pleadings. In any event, we emphasize that our result would be the same were we to apply the standard of a Rule 12(b)(6) motion to dismiss.

**2.** We note that plaintiff has filed a separate *pro se* action against the Pittsburgh Police which is currently pending in this Court. *Ernestine A. Fultz v. Officer Lucia, Officer Peyton, Officer Phillip, H.A.C.P., Housing Authority City of Pittsburgh,* C.A. 85–2128.

Mr. Jones, after reviewing plaintiff's complaint, determined that Mrs. Fultz was not eligible to receive free legal services because she requested assistance in bringing criminal charges against the Pittsburgh Police. Mrs. Fultz was advised of Albert Jones' decision in a letter dated December 20, 1985, which stated:

Dear Mrs. Flutz (sic):

I have received a response from the Northside office concerning your complaint. I was informed that the legal matter that you came to see Neighborhood Legal Services about was criminal in nature. Neighborhood Legal Services does not handle any criminal complaints. In both of your letters to me you failed to mention what the legal problem was. If you would like to tell me now, I will explain to you whether or not you were properly advised by the Northside office. I was further advised that you were referred to the pro bono lawyer panel. Apparently, according to your letter, you had trouble getting through to the pro bono lawyers and came back to Neighborhood Legal Services even though you had been told that we could not represent you.

If you claim that you were not told that we do not handle criminal matters or if you feel that your problem was not a criminal matter, please contact me so we can discuss this matter further.

Very trul (sic) yours,
S/ ALBERT J. JONES
ASSISTANT DIRECTOR

In reponse to the above letter, plaintiff sent Mr. Jones a lengthy letter dated December 22, 1985, wherein she bitterly complained about defendants' conduct in refusing her legal services. The instant lawsuit followed.

*Summary Judgment*

When considering a motion for summary judgment, the Court must determine whether the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, when viewed in the light most favorable to the non-moving party, present a genuine issue as to any material fact. If not, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of a disputed fact is determined by looking to the substantive law of the case. Disputes over facts which will not affect the outcome of the case do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. ——, ——, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202, 211 (1986).

The moving party bears the burden of proving that no genuine issue exists. *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, this burden can be discharged by merely pointing out the "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. ——, ——, 106 S.Ct. 2548, ——, 91 L.Ed.2d 265, 275 (1986). Once the moving party has met that burden, it becomes incumbent upon the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at ——, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

Any doubts must be resolved in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985) (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981)).

Although *pro se* litigants should not be denied the opportunity to bring a civil rights claim because of technicalities, *Kauffman v. Moss*, 420 F.2d 1270, 1276 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), they must still comply with a minimum pleading standard. Fed.R. Civ.P. 8(a)(2); *Green v. Commonwealth of Massachusetts*, 108 F.R.D. 217, 218 (D.C. Mass.1985). After viewing all factual inferences in a light most favorable to the plaintiff, as we must, we conclude that there are no genuine issues of material fact and that the instant dispute may be resolved as a matter of law.

*Discussion*

■ A deprivation under color of state law of a right secured by the laws of the

United States is actionable under 42 U.S.C. § 1983. Initially, defendants contend that plaintiff has failed to state any claims against them arising under § 1983 because they are private, not state, actors. Here, it is clear that NLSA is a private, nonprofit Pennsylvania corporation. Regardless of what test is applied for ascertaining the existence of state action, *see Community Medical Center v. Emergency Medical Services of Northeastern Pennsylvania, Inc.*, 712 F.2d 878 (3d Cir.1983), we find that plaintiff has failed to establish the requisite element of state action. *See Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447 (1st Cir.1983) (receipt of Commonwealth funds alone by legal assistance corporation not enough to establish that corporation was a state actor); *Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (2d Cir.1971) (legal aid society did not act under color of state law by virtue of financial and other benefits received from City of New York and other governmental agencies). In the instant case, we find that long before NLSA received funds from the federal and state governments, its board had a policy of not handling the types of cases which plaintiff desired to pursue simply due to its limited resources. Thus, it is likely that NLSA would have denied plaintiff assistance notwithstanding the fact that it received funds from LSC and PLSC.

■ Alternatively, were we to find that NLSA is a state actor, plaintiff's § 1983 claim would still fail because the Legal Services Corporation Act does not create rights which are enforceable under § 1983.

*Legal Services Corporation Act*

The Legal Services Corporation Act, 42 U.S.C. § 2996–2996*l*, establishes the LSC which, in turn, funds local legal aid programs, including NLSA, out of annual appropriations by Congress. Foreseeing that the demand for legal services by the poor would exceed the resources allocated, Congress established guidelines and priorities for the use of these resources by local legal aid chapters. 42 U.S.C. § 2996f(b) provides in pertinent part:

(b) Limitations on uses

No funds made available by the Corporation under this subchapter, either by grant or contract, may be used—

(1) to provide legal assistance (except in accordance with guidelines promulgated by the Corporation) with respect to any fee-generating case (which guidelines shall not preclude the provision of legal assistance in cases in which a client seeks only statutory benefits and appropriate private representation is not available);

(2) to provide legal assistance with respect to any criminal proceeding, except to provide assistance to a person charged with a misdemeanor or lesser offense or its equivalent in an Indian tribal court;

. . . . .

Pursuant to the authority granted in § 2996g(e), regulations were promulgated which appear in 45 C.F.R. § 1600–1629.6. Section 1620 establishes a system for the priority allocation of resources among competing claims. Moreover, § 1621 mandates the establishment by local legal aid chapters of an administrative client grievance procedure.

An instructive case is the recent decision in *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 615 F.Supp. 916 (N.D.Tex.1985), in which the court stated:

A client who feels that he has improperly been denied legal services may pursue an administrative client grievance procedure, 45 CFR § 1621 (1980), but he cannot sue in federal court. *Nabke v. U.S. Department of Housing and Urban Development*, 520 F.Supp. 5 (W.D.Mich. 1981). Similarly, there is no private cause of action under the Act for persons aggrieved by violations of the Act. *Grassley v. Legal Services Corp.*, 535 F.Supp. 818 (S.D.Iowa 1982).

The Act is designed to provide a mechanism for funding legal assistance to those unable to afford it. The Act does not create in the indigent any right to legal services which is enforceable under § 1983. *See Pennhurst, [State School and Hospital v. Halderman]*, 451 U.S.

[1] at 18–20, 101 S.Ct. [1531] at 1540–41 [67 L.Ed.2d 694 (1981)] (no enforceable rights arising from "bill of rights" provision of the Developmentally Disabled Assistance and Bill of Rights Act of 1975); *Boatowners and Tenants Association v. Port of Seattle,* 716 F.2d 669 (9th Cir. 1983) (no enforceable rights arising from the River and Harbor Improvements Act); *Perry v. Housing Authority of the City of Charleston,* 664 F.2d 1210, 1217 (4th Cir.1981) ("The plaintiffs have not pointed to any substantive provisions of the various housing acts which give them any tangible right, privilege, or immunity").

*Id.* at 937.

"It is obvious that both Congress and the Legal Services Corporation foresaw that not every applicant could receive assistance from legal aid." *Nabke,* 520 F.Supp. at 8. While plaintiff in the instant case is a member of the class of possible beneficiaries for whose benefit the statute was enacted, it does not follow that there is a federal right to such assistance where the priority allocation of inadequate resources is clearly a part of the statutory scheme. The legislative history of the Act evidences the congressional intent to deny such a remedy. We note that a section of the proposed Act explicitly providing a private remedy was deleted in committee in both houses. S.Rep. No. 93–475, 93rd Cong., 1st Sess. (1973); H.Rep. No. 93–247, 93rd Cong., 1st Sess. (1973), reprinted in 1974 U.S.Code Cong. & Ad.News 3872, 3894–96. Moreover, efforts to amend the bill on the floor of the House which would have reinserted the private remedy provision were defeated. 119 Cong.Rec., 20725–20729 (1973).

To permit a private right of action under 42 U.S.C. § 2996 would undercut the purpose of the Act, which was designed to provide maximum legal services to the poor on a priority basis with limited funds. *Nabke,* 520 F.Supp. at 8. "The necessity of defending lawsuits and paying judgments would rechannel those funds and services away from this intended purpose." *Id.* We conclude, therefore, that there is no private right of action under 42 U.S.C. § 2996 against NLSA, or its employees, Barbara Smith and Albert Jones.

In support of our result, we note that recent budgetary cutbacks by the current administration have drastically reduced the amount of full-time lawyers employed by NLSA. While we recognize how these cutbacks have created both confusion and unhappiness among the local citizenry, including Mrs. Fultz, we reiterate that disputes such as the one before us cannot be resolved by the courts.

## Developmentally Disabled Assistance and Bill of Rights Act

■ In her complaint and subsequent pleadings, plaintiff contends that defendants' denial of representation violated certain unspecified "rights" allegedly guaranteed by 42 U.S.C. § 6010 (now codified at 42 U.S.C. § 6009) (Supp.1986). However, plaintiff has never claimed to be a developmentally disabled individual, as defined in § 6001(7), nor has she established that NLSA receives any funds appropriated under said Act. Moreover, it is well settled that the "Bill of Rights" set forth in Section 6010, which plaintiff relies on, does not create rights which can be enforced by bringing a § 1983 claim. *Pennhurst,* 451 U.S. at 18–20, 101 S.Ct. at 1540–41, 67 L.Ed.2d at 707–09; *Howard Gault Co.,* 615 F.Supp. at 937. For these reasons, plaintiff has failed even to state a claim under the Developmentally Disabled Assistance and Bill of Rights Act.

## Fourteenth Amendment Claims

■ Initially, we note that a plaintiff bringing an action under the fourteenth amendment, like § 1983, must show state involvement. The under-color-of-state-law requirement of § 1983 is synonymous with the state action requirement of the fourteenth amendment. *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). In the instant case, we have already concluded that plaintiff has failed to establish the requisite state involvement in our discussion of her § 1983 claim. Notwithstanding this finding, we

conclude that plaintiff's fourteenth amendment claims are meritless for the reasons which follow.

## A. *Equal Protection*

■ Plaintiff alleges that she was treated differently than any other prospective client of NLSA who sought representation in a criminal or fee-generating tort action. However, there is no factual support for this contention since plaintiff, like any other similarly situated client, was told that NLSA could not handle her claims since they were designated as non-priority. Consequently, plaintiff was referred to a *pro bono* panel of lawyers which, in some instances, provides legal services to individuals when NLSA cannot.

■ In any event, the alleged difference in treatment does not trigger a violation of the equal protection guarantee of the Fifth and Fourteenth Amendments because: 1) the Constitution does not guarantee explicitly or implicitly a fundamental right to free civil legal services; and 2) indigents are not a protected or "suspect" class, *see San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Any perceived difference in treatment was justified by a legitimate purpose—NLSA's allocation of its limited resources. *Cf. Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (state administrative regulation imposing maximum limit on total amount of aid which any one family can receive under Federal AFDC program was not violative of equal protection clause). Thus, assuming that defendants are state actors, plaintiff's equal protection claim will be dismissed on the ground that the decision of NLSA had a rational basis supported by the record. *See Showers v. Cohen*, 645 F.Supp. 217, 220 (M.D.Pa.1986) ("proper standard for judicial review of due process and equal protection challenges to social welfare laws is minimal scrutiny [whether the law is rationally related to a legitimate government interest]") (citations omitted).

## B. *Procedural Due Process*

As noted earlier, plaintiff complained directly to Mr. Jones about NLSA's decision not to provide her with free legal services. However, when informed that NLSA does not handle such cases, plaintiff never followed up on Mr. Jones' instructions to contact him if she disagreed with his decision. *See* Affidavit of Albert J. Jones. Had plaintiff done so, she could have ultimately availed herself of NLSA's client grievance procedure. Moreover, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). Here, plaintiff was not deprived of a significant property interest since she cannot make a legitimate claim of entitlement to free legal services within the Due Process Clause. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548, 561 (1972).

Since we find no property interest in the present situation, and again assuming that defendants are state actors, we will dismiss plaintiff's fourteenth amendment procedural due process claim.

## Title VI

■ While not raised in her initial complaint, plaintiff subsequently filed a document with this Court on September 22, 1986, alleging that she is also relying upon Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which provides as follows:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

However, like plaintiff's equal protection claim, plaintiff has failed to allege or present any evidence proving discriminatory intent or impact resulting from the challenged actions. Here, NLSA's classification of what services it renders, on its face, is racially neutral; thus, plaintiff must establish a discriminatory intent or purpose. *Arlington Heights v. Metropolitan Hous-*

*ing Dev. Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 562–63, 50 L.Ed.2d 450, 464 (1977); *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, 608–09 (1976). *Compare University of California Regents v. Bakke,* 438 U.S. 265, 289, 98 S.Ct. 2733, 2747, 57 L.Ed.2d 750, 770 (1978) (University's special admissions program involved a purposeful, acknowledged use of racial criteria). In the present case, plaintiff has failed to satisfy this burden because she has not specifically alleged what conduct, if any, of the defendants constituted discrimination. Because plaintiff has failed even to allege specific discriminatory intent, we conclude that her claim under 42 U.S.C. § 2000d should be dismissed.

Accordingly, we will grant defendants' motion to dismiss.

An appropriate written order will be entered.