Casey D. STENGEL, et al., Plaintiffs,

v.

CITY OF COLUMBUS, OHIO, et al., Defendants.

No. C–2–87–1409.

United States District Court,
S.D. Ohio, E.D.

July 29, 1989.

See also, 737 F.Supp. 1457.

John Lewis, Columbus, Ohio, and Steve Edwards, Grove City, Ohio, for plaintiffs.

Glenn B. Redick, Asst. City Atty., Columbus, Ohio, for City of Columbus.

Harold Wonnell, Columbus, Ohio, for defendant Belcher.

## OPINION AND ORDER

GRAHAM, District Judge.

This case arises out of a shooting incident which occurred in a bar in Columbus, Ohio. Raymond Belcher, an off-duty Columbus policeman, became involved in an altercation with three young men. Using his service revolver which he was carrying pursuant to departmental regulations, even though off duty, the officer shot the three young men, killing two of them and seriously injuring the third. Thereafter, suit was brought in the United States District Court by Casey Stengel and the estates of the two deceased men, asserting violations of the plaintiffs' constitutional rights under 42 U.S.C. § 1983. Suit was brought against the officer and the City of Colum-

bus. The City was dismissed prior to trial because under the law, as it then existed, a municipality was not a person within the meaning of 42 U.S.C. § 1983. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Plaintiffs did not appeal the City's dismissal. The claims against Officer Belcher proceeded to trial. The jury found in favor of the plaintiffs and awarded compensatory damages in the amount of $9,000 to Noe's estate, $19,000 to Ruff's estate and $800,000 to plaintiff Stengel. The jury also awarded each plaintiff $1,000 in punitive damages. The award was affirmed on appeal. *See Stengel v. Belcher*, 522 F.2d 438 (6th Cir.1975). On June 6, 1978, in the case of *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court overruled *Monroe v. Pape*, holding that municipalities can be sued directly under § 1983 in those situations in which the action that is alleged to be unconstitutional implements a policy or decision promulgated by those whose edicts or acts may be fairly said to represent official policy of the municipality.

Plaintiffs' efforts to collect their judgment from Officer Belcher have been largely unsuccessful. On April 4, 1977, plaintiffs' counsel submitted a claim to the Chairman of the Judiciary Committee of the Columbus City Council requesting payment of plaintiffs' judgments on the theory that they represented moral obligations of the City. This letter and the memorandum which accompanied it are part of the documents attached as exhibits to plaintiffs' additional exhibits to memorandum contra to defendants' motion for summary judgment filed on June 8, 1989. (Doc. No. 33).

The City attorney's office offered plaintiffs $25,000.00 in settlement of their claims. Plaintiffs responded by letter to First Assistant City Attorney Robert A. Bell, indicating that this offer was unacceptable to plaintiffs. The City Council took no further action toward paying plaintiffs' judgments as a moral obligation, and plaintiffs pursued no further action against the City at that time.

Nine years later, in July, 1986, plaintiffs' counsel sent a request to the Columbus Police Department, with copies to all council members, requesting the preparation of an ordinance providing for the payment of plaintiffs' judgments as moral obligations. Having received no response, plaintiffs' counsel wrote directly to the council members, reiterating the request that plaintiffs' judgments be paid as moral obligations.

Plaintiffs' submittals to City Council members included a memorandum in support of plaintiffs' request for allowance of their claims. That memorandum is attached to plaintiffs' motion to compel discovery, attorney fees and to extend discovery cut-off, filed on April 14, 1989. (Doc. No. 14). The reasons cited in support of the claim submitted in 1986 and 1987 are essentially the same, except for a discussion of *Monell v. New York Department of Social Services, supra.*

On March 5, 1987, the city attorney for the City of Columbus, Ronald J. O'Brien, wrote to plaintiffs' counsel as follows:

This letter is in response to your February 25, 1987, letter to members of City Council in which you request City Council to recognize, as a moral obligation, a claim of Casey Stengel, based upon the case tried to completion in 1974. This claim is identical to the one you submitted ten years ago and which City Council refused to recognize. At that time this office recommended against the recognition of a moral obligation claim and nothing has occurred that would change that recommendation today.

On November 24, 1987, plaintiffs commenced the present action against the City of Columbus, the present members of its City Council and Officer Belcher. In the complaint, plaintiffs asserted claims against the City and its council members under 42 U.S.C. § 1983, alleging that these defendants had violated plaintiffs' constitutional rights by refusing to pay their judgments as moral obligations. Plaintiffs alleged that the City has a past practice, custom, policy, and procedure of paying judgments on behalf of police officers who have violated the civil rights of citizens.

Plaintiffs claim that defendants' refusal to pay the judgments as a moral obligation or to grant plaintiffs a hearing was a violation of their rights under the First and Fourteenth Amendments to the United States Constitution. In a memorandum and order filed on October 18, 1988, the Court granted defendants' motion to dismiss plaintiffs' claims based upon the alleged violation of their First Amendment right to petition and their due process rights under the Fourteenth Amendment. Plaintiffs' claims of denial of equal protection under the Fourteenth Amendment, similar claims under the Equal Protection Clause of the Ohio Constitution and plaintiffs' state law claim under Ohio Revised Code § 2744.07(A)(2) remain for adjudication.

The matter is now before the Court on the motion of the defendants City of Columbus, Hammond, Shoemaker, Portman, Espy, Lazarus, and Mentel for summary judgment filed on May 2, 1989 and on the supplemental motion of defendants Hammond, Shoemaker, Portman, Espy, Lazarus and Mentel for summary judgment in their individual capacities filed on May 26, 1989.

Defendants seek summary judgment on plaintiffs' equal protection claim under § 1983. Defendants claim that, based upon the undisputed facts, plaintiffs' equal protection claim must fail as a matter of law, and further that such claims are barred by the statute of limitations.

Section 1 of the Fourteenth Amendment to the United States Constitution provides in part as follows:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The Equal Protection Clause is a guarantee of equal protection of the laws. Defendants have enacted no law or ordinance which affects plaintiffs' rights. Indeed, plaintiffs' complaint is that defendants have failed to enact a law or ordinance which would provide compensation to them.

Plaintiffs argue that § 1983 authorizes redress of constitutional rights where the defendant acts "under color of any statute, ordinance, regulation, custom, or usage, of any State...." Plaintiffs apparently claim that the City has a custom and practice of allowing claims as moral obligations but that the City refused to allow their claims because of their large amount, and that this violates the equal protection clause.

■ The equal protection clause applies not only to duly enacted statutes and ordinances, but also to local customs, policies, or usages which have the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Such a custom or usage must have the force of law by virtue of the persistent practices of state officials. *Id.* at 167, 90 S.Ct. at 1613. As the court stated, *Id.* at 168, 90 S.Ct. at 1613–1614:

This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements.

■ Plaintiffs have not shown that defendants' practice or custom of paying claims as moral obligations has the force of law. Payment of such claims rests entirely within the collective discretion of city council members based upon the circumstances of each individual claim. There has been no showing that city council has honored every claim based upon moral obligation presented to it.

■ Even assuming that occasional payments made on the basis of moral obligation arise to a custom or practice with the force and effect of law, plaintiffs have not demonstrated the existence of a genuine issue of material fact concerning whether a violation of the Equal Protection Clause has been established.

State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause. *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979). Lawmakers have wide discretion in enacting measures which have

the effect of treating some people differently from others, and such measures are valid unless they bear no rational relationship to a permissible state objective. *Id.* at 351, 99 S.Ct. at 1745. Unless a statute employs a classification which results in invidious discrimination or the impingement of fundamental rights, a court has limited power to review the determinations of the legislative body elected by the public to choose between alternative solutions to social and economic problems. *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

Plaintiffs have submitted no evidence to suggest that invidious discrimination played any role in the denial of their claims. Likewise, the decision to decline to pay plaintiffs' claims did not impinge upon a fundamental right, since plaintiffs have no fundamental or constitutional right to the payment of a purely moral obligation.

Therefore, the standard of review is whether the defendants' decision to deny payment bore a rational relationship to a governmental interest. Defendants claim in the first instance that the claims submitted by plaintiffs did not fall within the definition of a moral obligation.

■ Under Ohio law, a municipality is authorized to pay certain moral obligations. In *State, ex rel. Caton v. Anderson,* 159 Ohio St. 159, 111 N.E.2d 248 (1953), the Ohio Supreme Court held:

1. A municipality has the authority to enact an ordinance appropriating money to pay a claim which is by law unenforceable against it but which on principles of justice and equity constitutes a moral obligation of the municipality.

2. An obligation may be recognized by a municipality, where such obligation would be enforceable at law were it not for some rule which exempts the municipality in the particular instance from legal liability, or where the obligation is legally unenforceable but is binding upon the municipality in conscience and according to natural justice.

3. A municipality is without authority to assume a liability for a mere gratuity to an injured person, where there is no equitable or moral claim predicating such gratuity.

4. The extent to which moral or equitable claims against a municipality should be recognized is primarily for the legislative authority of the municipality to determine, provided, only, that such municipality may not expend any money for other than a city purpose or give it away.

Plaintiffs' claims do not satisfy the definition of a moral obligation under the controlling Ohio case. Plaintiffs' claims do not rest upon an obligation which would be enforceable against the City at law were it not for some rule which exempts the City from legal liability in the particular case. Under the controlling law at the time, the City was not a "person" within the meaning of § 1983, and therefore did not fall within the scope of liability provided by that section. This is not a case in which the City escaped liability on the grounds of sovereign immunity or some other defense or technicality which did not go to the merits of the claim.

This is also not a case where plaintiffs' claims constitute an obligation which is legally unenforceable but binding upon the City in conscience and according to natural justice. Plaintiffs suggest that the City's dismissal from the original litigation on the basis of *Monroe v. Pape* brings this case within the definition of a moral obligation. However, when *Monroe v. Pape* was overruled by *Monell v. New York City Department of Social Services,* a municipality became liable to persons in the position of the plaintiffs only if they could prove that the excessive use of force was a result of implementation of a governmental policy, ordinance, regulation, custom or practice. The Court in *Monell* rejected the doctrine of *respondeat superior* as a basis for municipal liability and instead concluded that a municipality could be held liable only when an injury was inflicted by a government's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct.

at 2037. In *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the court found that a municipal policy or custom of inadequate training could not be inferred from evidence of a shooting incident involving a single police officer. Plaintiffs have not produced evidence in this case, nor in any of their submissions to City Council, which would show that in violating plaintiffs' constitutional rights, Officer Belcher was acting pursuant to a policy of an official decision-maker so as to make the City liable for their injuries under *Monell.* Absent a showing that the City would be liable for the injuries and damages that he sustained at the hands of defendant Belcher, plaintiffs have failed to show that their judgments are moral obligations as defined in *State, ex rel. Caton v. Anderson.*

There is nothing in the facts of this case which suggests that payment of these judgments should be binding upon the municipality in conscience and according to natural justice. Here, the jury found that defendant Belcher acted maliciously, as evidenced by its award of punitive damages to each of the plaintiffs. It should be noted that this fact alone distinguishes the present case from other cases which plaintiffs have brought to the Court's attention in which the City paid a judgment awarded against a policeman. *See* Ordinance No. 306–78, attached to plaintiffs' motion to compel discovery, attorney fees and to extend discovery cut-off, filed April 14, 1989 (Doc. No. 14); Plaintiffs' Exhibit A to memorandum contra (Doc. No. 26). In these other ordinances, it is noted that the shootings or other injuries were accidentally inflicted, or that no punitive damages were awarded. Many note that the officer was on duty at the time, whereas here, the officer was not on duty when the incident occurred. Many of these ordinances reflect prejudgment settlement of claims, as part of which the injured party agreed to sign a release in favor of the City.

Plaintiffs contend that their claims were denied due to the size of the claims. Defendants deny that the size of the claims was a determining factor. However, even assuming that plaintiffs are correct, this would not result in an equal protection violation in this case. The fact that a governmental body has limited resources to dispense is one factor which may be taken into account in distributing those resources. For example, in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court upheld against an equal protection challenge a Maryland regulation which placed a ceiling on the amount of financial aid a single family could receive. *See also Fultz v. Neighborhood Legal Services*, 654 F.Supp. 881 (W.D.Pa.1987).

■ Plaintiffs note that the City has paid smaller claims as moral obligations. In fact, it is not disputed that the City in 1977 offered plaintiffs $25,000 in settlement of their claims, an amount comparable or greater than other amounts paid in some of the previous moral obligation payments or litigation settlements reflected in the other ordinances submitted as exhibits. Plaintiffs declined to accept the City's offer. While the City would not be free to discriminate on the basis of some invidious or irrational classification in dividing the assets of a limited fund for distribution, the law does not require defendants to ignore the restrictions on their financial resources in otherwise deciding whether to honor a claim based upon moral obligation and in what amount. The payment of an unusually large claim in its entirety might well result in other claims of greater merit going unpaid.

Plaintiffs have not produced any evidence to show that discrimination or some other irrational basis played a role in the decision to deny their claim as submitted. Absent such a showing, this court's review is limited. The determination of the relative merit of claims submitted as moral obligations is one which is peculiarly within the province of City Council. What is perceived as a moral obligation in the sight of one council member may not be so perceived by another. The collective opinion of council may change as the membership of the council changes, in further reflection of changes in the conscience of the community which elects the council members.

Plaintiffs cannot convert their claims from alleged moral obligations into legal obligations simply because their view of what constitutes a worthy and genuine moral obligation differs from the views of the council members in that regard. The council members, as duly elected representatives of the citizens of the City of Columbus, have a legitimate interest in determining what types of claims are truly moral obligations.

■ Defendants argue in the alternative that plaintiffs' § 1983 claims are barred by the statute of limitations. Plaintiffs' judgment became final in 1976. In April of 1977, plaintiffs submitted a claim to the City Council of the City of Columbus as a moral obligation and threatened the City with litigation under the equal protection clause if it failed to honor those claims. Ten years later, on November 24, 1987, plaintiffs commenced the present lawsuit which asserts the very same claims plaintiffs threatened in 1977. The statute of limitations in a § 1983 claim is two years. *See Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989). Plaintiffs claim, however, that they never received any rejection of their 1977 claim and that accordingly the statute of limitations did not begin to run until they received a denial of the claims submitted in 1986 and 1987.

In order to allow plaintiffs' claims, a member of the City Council would have to introduce an ordinance authorizing payment as a moral obligation and that ordinance would have to be approved by a majority of the members of council and would have to be signed by the mayor. When no member of council introduced such an ordinance in response to plaintiffs' 1977 request, it should have been obvious to plaintiffs that council had refused to act favorably on their request. The telephone communication with plaintiffs' counsel on or about September 22, 1977 offering a payment of $25,000, and counsel's letter of October 3, 1977 indicating that this would probably terminate their negotiations, provide further indication that the City declined plaintiffs' requests that their judgments be paid in full as moral obligations.

Plaintiffs took no further action for nine years. The facts relied upon when the claims were again submitted in 1986 and 1987 are essentially the same facts relied upon when the claims were submitted in 1977. They are in fact the same claims. Plaintiffs' claims are barred by the statute of limitations.

Defendants' motion for summary judgment is well taken.

■ The individual defendants have also filed a motion for summary judgment in their individual capacities, asserting the defense of qualified immunity. The defense of qualified immunity requires focusing on the objective legal reasonableness of the official's actions in light of clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The issue is whether the defendants reasonably could have thought that their actions were consistent with the rights that plaintiffs claim have been violated. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The legal reasonableness of defendants' actions must be examined in light of whether, at the time defendants acted, the rights asserted were clearly established by decisions of the Supreme Court or the Sixth Circuit. *Garvie v. Jackson,* 845 F.2d 647 (6th Cir. 1988). It is not determinative that plaintiffs have alleged a violation of a broadly stated general right; rather, the right allegedly violated must have been clearly established in a sufficiently particularized manner, so that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* at 650; *Ramirez v. Webb,* 835 F.2d 1153 (6th Cir.1987).

The court concludes that, even assuming that the evidence presented by plaintiffs established a violation of the Equal Protection Clause (which the court has found it does not) the defendants would not have been reasonably aware, based upon the case law existing at the time, that their conduct in denying the payment of plaintiffs' claims as a moral obligation in any way infringed upon plaintiffs' rights. In fact, plaintiffs' rights in this situation are

not clearly established by the case law existing at the time. The motion of the individual defendants for summary judgment on the basis of qualified immunity is granted.

■ The claims remaining are state law claims. Defendants have correctly noted that this court does not have jurisdiction by reason of diversity of the parties because some plaintiffs and the defendants are residents of Ohio. The court has dismissed plaintiffs' claims under § 1983. In the absence of an independent basis for invoking federal jurisdiction, this court no longer has jurisdiction over purely state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gibson v. First Federal Savings & Loan Assoc.,* 504 F.2d 826 (6th Cir.1974). A dismissal of all federal claims before trial requires dismissal of the state claims as well. *Kurz v. Michigan,* 548 F.2d 172 (6th Cir.1977). It is particularly appropriate in this case to decline to exercise pendent jurisdiction because Ohio courts have not yet addressed several important issues which might arise under Ohio Revised Code Section 2744.07, including whether plaintiffs have standing to pursue a claim under that section. Therefore, the court, having previously deferred ruling on the second branch of defendants' motion to dismiss, hereby grants that motion.

The court further finds that the above rulings are also appropriate in regard to the claims against Raymond Belcher, and the claims against him are likewise dismissed.

In accordance with the foregoing, defendants' motions for summary judgment are granted. The second branch of defendants' motion to dismiss of August 8, 1988 is granted. The claims against defendant Belcher are dismissed. Judgment shall be entered for defendants on plaintiffs' claims under § 1983. Plaintiffs' state law claims are dismissed without prejudice.