**Silvestre MORENO, Jr., Plaintiff,**

v.

**TEXAS SOUTHERN UNIVERSITY, Thurgood Marshall School of Law, James Douglas, Dean and Danny Holley, Associate Dean in Their Official Capacities, Defendants.**

**Civ. A. No. H–83–2736.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 17, 1983.

Silvestre Moreno, Jr., pro se.

Paul D. Rich, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

Plaintiff Silvestre Moreno, appearing *pro se*, brought this suit for violation of his rights pursuant to the fifth and fourteenth amendments; 42 U.S.C. § 1983; and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq., as a result of certain action taken by defendants during plaintiff's academic suspension from Texas Southern University, Thurgood Marshall School of Law.

Presently before the court is defendants' motion to dismiss. Defendants contend that this suit for monetary damages, against an educational institution so closely connected with the state, is essentially against the state, and, consequently, is barred by the doctrine of sovereign immunity under the eleventh amendment. Plaintiff opposes the motion, averring that Texas Southern University is an independent body not protected by eleventh amendment immunity. This court will first examine the effect of eleventh amendment immunity on the fourteenth amendment and § 1983 claims for damages. In a separate section, this court will address whether money damages are available under Title VI.

I. THE EFFECT OF ELEVENTH AMENDMENT IMMUNITY ON § 1983 AND FOURTEENTH AMENDMENT CLAIMS FOR DAMAGES

According to well established precedent, a citizen of a state may not bring an action against a state in federal court unless the state consents. It is not necessary for the state to be a nominal defendant; the suit is barred nonetheless when a state official is sued if the recovery will come from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *United Carolina Bank v. Board of Regents of Stephen F. Austin State University*, 665 F.2d 553, 557 (5th Cir.1982). Because plaintiff is seeking monetary relief, this court must determine whether Texas Southern University, Thurgood Marshall School of Law ("T.S.U.") and its deans, sued in their official capacities, are "to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity or [are] instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *United Carolina Bank*, 665 F.2d at 557; *Gay Student Services v. Texas A & M University*, 612 F.2d 160, 165 (5th Cir.1980); *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir.1975). Whether the state is the real party in interest is a question of federal law, but to make that determination, this court must "examine the powers, characteristics and relationships created by state law ...." *Hander*, 519 F.2d at 279; *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 572.

As the fifth circuit noted in *United Carolina Bank*, most courts confronted with the question of the eleventh amendment status of state universities have found that these institutions are in fact arms of the state. 665 F.2d at 557. Yet, each state's

plan for higher education must be examined individually. *Id.* The federal courts have overwhelmingly found various universities in the systems established under Texas law to be arms of the state. *See, e.g., United Carolina Bank,* 665 F.2d at 556–61 (implicitly overruling *Hillis v. Stephen F. Austin State University,* 486 F.Supp. 663 (E.D.Tex.1980)); *Zentgraf v. Texas A & M University,* 492 F.Supp. 265 (S.D.Tex.1980); *Hart v. University of Texas at Houston,* 474 F.Supp. 465 (S.D.Tex.1979); *Henry v. Texas Tech University,* 466 F.Supp. 141 (N.D.Tex.1979). Confronted with the eleventh amendment status of yet another university in the Texas system, T.S.U., this court will follow the fifth circuit's analysis in *United Carolina Bank.* Accordingly, this court will first examine the Texas statutes which define state agency, and then scrutinize the degree of control which the state retains over T.S.U. as well as T.S.U.'s fiscal autonomy.

The fifth circuit, in *United Carolina Bank,* found that under Texas law " 'state agency' includes a university system or an institution of higher education as defined in Section 61.003, Texas Education Code, as amended, other than a public junior college." 665 F.2d at 557 (citing Tex.Rev.Civ. Stat.Ann. art. 6252–9b § 2(8)(B) (Vernon Supp. 1982–1983)). Section 61.003(3) defines the general academic teaching institutions and includes T.S.U., as well as the other state universities such as Stephen F. Austin ("S.F.A."), Texas A & M, University of Texas at Houston ("U.T."), and Texas Tech, all of which were found previously to be arms of the state.

■ Texas has established a Coordinating Board of the Texas College and University System, consisting of eighteen members who are appointed by the governor with senate approval. *Id.* §§ 61.001–61.-028. This coordinating board exercises broad managerial powers over all the public institutions of higher learning in Texas, including T.S.U. *Id.* §§ 61.051–61.071; *see United Carolina Bank,* 665 F.2d at 558. T.S.U. is also under the control of its own Board of Regents, who are appointed by the governor with senate approval. Tex. Educ.Code Ann. § 106.01–.11 (Vernon 1972 & Supp.). T.S.U.'s Board of Regents ("board") has control over university funds, *id.* § 106.51, but it must maintain extensive accounts and submit a biennial report with copies to the governor, state treasurer, comptroller, state auditor, attorney general, and State Board of Control. *Id.* §§ 106.53–.54. The board is also limited in its use of fees collected from the student body. *Id.* § 106.37. The legislative intent for the board's authority is that it shall have the same powers as the governing boards of the University of Texas System and Texas A & M University System, "and similar institutions with regard to the control and use of local funds." *Id.* § 106.55. Texas law established T.S.U. in the same manner and with the same degree of control as it did S.F.A., U.T., and Texas A & M. Therefore, this court must find that T.S.U. is an arm of the state and immune to suit for damages under § 1983 and fourteenth amendment claims. Consequently, plaintiff is limited to equitable relief for these claims. *Gay Student Services,* 612 F.2d at 165.

Plaintiff mistakenly relies on *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) to support his damage claims against the defendants. In *Fitzpatrick,* the Supreme Court found that § 5 of the fourteenth amendment, which gives Congress the authority to enforce the amendment's provisions "by appropriate legislation," limited the scope of the eleventh amendment; accordingly, the Court authorized a damage award against a state pursuant to Title VII. *Id.* at 456, 96 S.Ct. at 2671. Congress' amendment of Title VII to include governmental bodies within the Act's definition of employer was a proper exercise of the legislature's authority to "provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Id.* at 456, 96 S.Ct. at 2671.

Because the Supreme Court is hesitant to award retroactive monetary liability against a state for prelitigation conduct, as

a general rule the Court construes the eleventh amendment to grant states immunity from damages but not from prospective injunctive relief against state officials. *Hutto v. Finney*, 437 U.S. 678, 690, 694–95, 98 S.Ct. 2565, 2573, 2575–76, 57 L.Ed.2d 522 (1978). To allow for an award of damages, the Court requires congressional intent to be explicit as, for instance, in the form of specific legislation pursuant to § 5 of the fourteenth amendment. *Jagnandan v. Giles*, 538 F.2d 1166, 1185 (5th Cir.1976). The fifth circuit has not found any such enforcing legislation in the fourteenth amendment or § 1983 context. *See, e.g., id.* at 1172–85.

## II. DAMAGE AWARDS UNDER TITLE VI

Plaintiff alleges that this cause of action arises, in part, under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq.[1] The cases relied on in the previous section discussed a state's eleventh amendment immunity from damages in the context of § 1983 and fourteenth amendment claims. Surprisingly, there is a dearth of case law on the issue of whether damages may be awarded against any party under Title VI, irrespective of eleventh amendment concerns. *See Drayden v. Needville Independent School District*, 642 F.2d 129, 133 (5th Cir.1981) (private right of action under Title VI encompasses relief in form of cessation of discriminatory activity but not recovery of back pay or losses); *Nabke v. United States Department of Housing and Urban Development*, 520 F.Supp. 5, 10–11 (W.D.Mich.1981) (damage remedy, which only indirectly furthers the purposes of the Act, are particularly inappropriate).

In one of the only cases to discuss the issue of monetary relief, the district court of Utah, without considering the effect of the eleventh amendment, refused to award general or punitive damages under Title VI. The court's rationale was compelling:

Plaintiff has available to him causes of action under several federal civil rights provisions which he has plead[ed] and which are capable of serving as a basis of some form of relief to plaintiff. These provisions adequately and more appropriately provide a basis for the relief sought by plaintiff. The clear concern and aim of Title VI is the prohibition of various forms of discrimination in federally funded programs in the manner specifically provided by the statute and to the limited extent recognized by judicial decision. It is not the purpose of Title VI to duplicate the means of relief already available and to provide a means of compensation for every conceivable injury or adverse reaction that arguably is in consequence of a violation of the provision.

*Rendon v. Utah State Department of Employment Security Job Service*, 454 F.Supp. 534, 536–37 (D.Utah 1978).

In *Guardians Association v. Civil Service Commission of New York*, —— U.S. ——, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), the Supreme Court was called upon to unravel prior precedent to determine whether proof of discriminatory purpose is a prerequisite to establish a violation under Title VI. A majority of the Court would require proof of discriminatory intent, but found proof of discriminatory impact sufficient to enforce the regulations rather than the statute itself. *Id.* 103 S.Ct. at 3235 n. 1 (Powell, Burger, Rehnquist, JJ., dissenting). In that extremely divided opinion, Justice White, joined by Justice Rehnquist, found that money damages should not be awarded in Title VI cases absent a finding of discriminatory purpose. *Id.* at ——, 103 S.Ct. at 3228–34. In so deciding, Justice White drew upon eleventh amendment

---

**1.** Although neither party addressed whether plaintiff may enforce a private right of action under Title VI, in the last five years at least eight Members of the Supreme Court have endorsed the view that Title VI may be enforced in a private action against recipients of federal funds. *Guardians Association v. Civil Service Commission of New York*, —— U.S. ——, ——, 103 S.Ct. 3221, 3228, 77 L.Ed.2d 866 (1983); *id.* at ——, 103 S.Ct. at 3250 (Stevens, Brennan, Blackmun, JJ., dissenting).

cases [2] and found that limiting claimants to prospective injunctive relief better fulfilled congressional purpose. *Id.* 103 S.Ct. at 3233 (citing *Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974)). Although Justice White's opinion on damages does not express the opinion of the court,[3] because this case does involve eleventh amendment consideration his analysis is helpful in the context of this case.

 Applying the *Rendon* rationale in light of the eleventh amendment concerns Justice White relied on in *Guardians Association,* and because this court finds no specific enforcing legislation of the type *Fitzpatrick* requires, the plaintiff is limited to equitable relief for his Title VI claims. *See Gilliam v. City of Omaha,* 388 F.Supp. 842, 847 (D.Neb.1975), *aff'd on other grounds,* 524 F.2d 1013 (8th Cir.1975); *Chambers v. Omaha Public School District,* 536 F.2d 222, 225 n. 2 (8th Cir.1976).

Inasmuch as plaintiff is proceeding in this case *pro se* and his complaint fails to adequately allege the necessary elements to implicate a Title VI violation, this court grants plaintiff leave to amend his complaint to include the allegations that T.S.U. receives federal funding and that defendant's conduct purposefully discriminated against plaintiff because of his race, color, or national origin. 42 U.S.C. § 2000d. In addition to his request for damages, plaintiff asked this court to grant any other appropriate relief. Because equitable relief under § 1983, Title VI and the fourteenth amendment is not barred, this court grants plaintiff leave to amend to request an appropriate equitable remedy. Plaintiff also asserted a claim under the fifth amendment but alleged no action which would constitute a violation of the amendment, consequently that claim is DISMISSED.

Accordingly, it is ORDERED, ADJUDGED and DECREED that defendant's motion to dismiss is DENIED and plaintiff is GRANTED leave to amend his complaint.

2. *Guardians Association* was a suit against a city commission; consequently, the eleventh amendment concerns, which are dispositive in a suit against a state, may be irrelevant in most Title VI litigation. *Id.* at ——, 103 S.Ct. 3251 (Stevens, Brennan, and Blackmun, JJ., dissenting) (finding that it is within a district court's discretion to award damages as an appropriate Title VI remedy); *id.* at ——, 103 S.Ct. at 3249 & n. 28 (Marshall, J., dissenting) (finding damages available as a "make whole" remedy under Title VI).

3. Only Justice Rehnquist concurred in Justice White's opinion on damages. Neither Justices Powell, O'Connor nor the Chief Justice address the appropriateness of monetary relief. *Id.* 103 S.Ct. at 3225–3237 (Powell, Burger, Rehnquist, JJ., concurring); *id.* at 3237 n. 1 (O'Connor, J., concurring).