**John IDOUX, Plaintiff,**

v.

**LAMAR UNIVERSITY SYSTEM,**
**et al., Defendants.**

**Civ. A. No. 1:92CV440.**

United States District Court,
S.D. Texas,
Beaumont Division.

April 7, 1993.

Laurence Wade Watts, Watts Glover & Wells, Houston, TX, for John Idoux.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Asst. Atty. Gen., Atty. General's Office, Gen. Litigation Div., Austin, TX, Robert J. Hambright, Orgain Bell & Tucker, Beaumont, TX, for Lamar University System, George McLaughlin, Bd. of Regents of Lamar University System, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy & Ron Steinhart.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Toni Hunter, Asst. Attys. Gen., Atty. General's Office, Gen. Litigation Div., Austin, TX, Lipscomb Norvell, Jr., Benckenstein Norvell & Nathan, Beaumont, TX, Grant Cook, Curt W. Moy, Keck Mahin & Cate, Houston, TX, Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, TX, for Ted Moor.

Ted Moor, pro se.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Toni Hunter, Asst. Attys. Gen., Atty. General's Office, Gen. Litigation Div., Austin, TX, Grant Cook, Curt W. Moy, Keck Mahin & Cate, Houston, TX, Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, TX, for Amelie Cobb.

Amelie Cobb, pro se.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Toni Hunter, Asst. Attys. Gen., Atty. General's Office, Gen., Litigation Div., Austin, TX, Robert J. Hambright, Orgain, Bell & Tucker, George Michael Jamail, Bernsen Jamail & Goodson, Beaumont, TX, for C.W. Conn.

## ORDER

KENT, District Judge.

Before the Court is the Motion for Summary Judgment of Defendants Lamar University System, the Board of Regents, and George McLaughlin, Ted Moor, Amelie

Cobb, C.W. Conn, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy, and Ron Steinhart, in their *official* capacity. The Defendants' Motion for Summary Judgment seeks the dismissal of some of the Plaintiff's claims primarily on the ground that sovereign immunity bars any suit against these Defendants. The Plaintiff's response to this motion disputes whether the Defendants are indeed immune from suit and, in the alternative, contends that, if sovereign immunity exists, the Defendants waived this immunity. The Court has determined that the Defendants are entitled to, and did not waive, sovereign immunity protection. Consequently, the Court GRANTS the Defendants' Motion for Summary Judgment. However, by granting this motion, the Court presents itself with a thorny procedural problem as to the proper disposition of this case. The Plaintiff claims that if the Court determines that the Defendants are protected by sovereign immunity, then the Court should remand this case to state court. Conversely, the Defendants contend that the Court should retain the case but dismiss the claims and parties affected by sovereign immunity. Ultimately, for the reasons herein stated, the Court concludes that this case should remain before this Court. Therefore, the Court herewith DISMISSES WITH PREJUDICE ALL CLAIMS AGAINST Defendants Lamar University System and the Board of Regents and ALL CLAIMS AGAINST George McLaughlin, Ted Moor, Amelie Cobb, C.W. Conn, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy, and Ron Steinhart, in their *official* capacity. The Court addresses all of these matters in greater detail below.

This case arises out of the alleged wrongful termination of the Plaintiff's employment as the interim president of Lamar University ("Lamar"). Subsequent to his dismissal, the Plaintiff filed suit under 42 U.S.C. § 1983 against Lamar, the Board of Regents, and the members of the Board of Regents in their official and individual capacities, seeking redress for alleged violations of his rights under the First and Fourteenth Amendments. The Plaintiff also sought compensation for the violation of rights guaranteed under several provisions of the Texas Constitution. In response, Defendants Lamar, the Board of Regents, and the members of the Board of Regents in their *official* capacity filed the Motion for Summary Judgment now before the Court.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case there is little dispute between the parties as to the facts material to the resolution of this motion.

### Sovereign Immunity

The Defendants' Motion for Summary Judgment contends that the portion of the Plaintiff's action alleging violations of the U.S. and Texas Constitutions should be dismissed because the Defendants possess sovereign immunity as guaranteed by the Eleventh Amendment. It is well settled that, unless expressly waived, the Eleventh Amendment forbids suit against a state, a state agency, or a department of the state by citizens of the state. *See, e.g., Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Whether a public university, the public university's governing board, and the members of the governing board in their official capacities qualify for this immunity depends upon the public university's status under state law and its relationship to the state government. *See Lewis v. Midwestern State University*, 837 F.2d 197, 198 (5th Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988); *United Carolina Bank v. Board of Regents of Stephen F. Austin State University*, 665 F.2d 553, 557 (5th Cir. 1982). The Fifth Circuit has developed the following list of factors to use when conducting this inquiry: 1) the status of the university under state law; 2) the degree of state control over the university; and 3) the extent to which a money judgment against the university would interfere with the fiscal autono-

my of the state. *Lewis,* 837 F.2d at 198; *United Carolina Bank,* 665 F.2d at 557.[1]

■ As to the status of Lamar under state law, the Texas Education Code classifies Lamar as a "general academic teaching institution" and a "public senior college or university." Tex.Educ.Code Ann. § 61.003(3)–(4) (Vernon Supp.1993). A university so classified is an agency of the state. Tex.Rev.Civ. Stat.Ann. art. 6252–9b, § 2(8)(B); *Lewis,* 837 F.2d at 198; *United Carolina Bank,* 665 F.2d at 557.

As to the degree of state control over Lamar, the Texas legislature created Lamar, and the governor and the Texas senate exercise control over Lamar's Board of Regents. Tex.Educ.Code Ann. § 108.01–11 (Vernon 1991). Moreover, the Coordinating Board, Texas College and University System, exercises broad managerial power over Lamar, Tex.Educ.Code Ann. § 61.001 *et seq.* (Vernon Supp.1993), and Lamar possesses the purchasing eminent domain power of a state agency. Tex.Rev.Civ.Stat.Ann. art. 601b, § 1.02(2)(C) (Vernon Supp.1993). The Fifth Circuit has held that a public university that manifests these characteristics is under the control of the State of Texas for the purposes of the Eleventh Amendment. *Lewis,* 837 F.2d at 198–99; *United Carolina Bank,* 665 F.2d at 557–58.

As to the last factor, the extent to which a money judgment against Lamar would interfere with the fiscal autonomy of the state, most of Lamar's operating expenses are provided through legislative appropriation. It is true that Lamar does receive funds from local sources over which the legislature has very little control. However, the existence of these funds does not obviate Lamar's status as an agency of the state. The Fifth Circuit in similar cases has held: "These local funds, collected under the authority of state law, Tex.Educ.Code Ann. § 51.004, are either held in the Treasury or are restricted as to use. In either event they are subject to audit and budget planning. Thus any award from those funds would directly interfere with the state's fiscal autonomy." *Lewis,* 837 F.2d at 199; *United Carolina Bank,* 665 F.2d at 561.

In view of these above factors, the Court concludes that Lamar University is, without a doubt, an arm of the state of Texas. In reaching this decision, the Court joins the multitude of other courts that have consistently held that the general academic teaching institutions and public senior colleges and universities of this state are part of the state. *See, e.g., Lewis,* 837 F.2d at 199; *United Carolina Bank,* 665 F.2d at 561; *Clay v. Texas Woman's University,* 728 F.2d 714 (5th Cir.1984); *Jagnandan v. Giles,* 538 F.2d 1166 (5th Cir.1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); *Moreno v. Texas Southern University,* 573 F.Supp. 73 (S.D.Tex.1983); *Zentgraf v. Texas A & M University,* 492 F.Supp. 265 (S.D.Tex.1980); *Henry v. Texas Tech University,* 466 F.Supp. 141 (N.D.Tex.1979); *Hart v. University of Texas at Houston,* 474 F.Supp. 465 (S.D.Tex.1979). Because Lamar University is a part of the state, the Eleventh Amendment bars the Plaintiff from bringing any action against Lamar, the Board of Regents, and the members of the Board of Regents in their official capacity. However, it is important to note that the allegations against the members of the Board of Regents in their *individual* capacities, at least for the present, are still extant.[2]

---

1. The Plaintiff cited a different, yet essentially similar, test for use in determining whether an entity is an extension of the state. The elements of that test are: 1) treatment by the entity under state law; 2) source of funds; 3) degree of local autonomy; 4) whether the entity is enclosed with local or statewide problems; 5) whether the entity can sue or be sued in its own name; and 6) whether the entity can hold or use property. *See, e.g., Delahoussaye v. City of New Iberia,* 937 F.2d 144, 147 (5th Cir.1991); *Farias v. Bexar County Board of Trustees,* 925 F.2d 866, 874 (5th Cir.1991). This test generally appears in cases in which the entity under consideration for Eleventh Amendment immunity is something other than a state university. In the Court's estimation, the test cited in the body of this Order is merely a specific adaptation of this longer test cited by the Plaintiff for use in situations were the status of a four-year state university is in issue.

2. In addition to the sovereign immunity defense, the Defendants also claim that the Plaintiff's § 1983 action should be dismissed because the Defendants are not "persons" subject to suit as that term is contemplated under § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S.

### Waiver of Sovereign Immunity

Having determined that the Defendants are entitled to sovereign immunity protection, the Court next considers an assertion made by the Plaintiff in his response to the Motion for Summary Judgment, that even if the Defendants are considered a part of the state for Eleventh Amendment purposes, Lamar, the Board of Regents, and the members of the Board of Regents in their official capacity are still subject to suit because they have waived sovereign immunity protection. The Plaintiff bases this waiver argument on two grounds.

■ First, the Plaintiff claims that the State of Texas, and, consequently Lamar University, have waived sovereign immunity for all claims that are based on the Texas Constitution. This argument is premised on the holdings in *Presidio Bridge Co. v. Presidio County*, 726 S.W.2d 212 (Tex.App.—El Paso 1987, no writ), and *Steele v. City of Houston*, 603 S.W.2d 786 (Tex.1980). In both of these cases, the defendants attempted to defend themselves by asserting sovereign immunity. However, in both cases, the courts held that the defendants waived this defense. In the process of reaching this decision, both courts made statements similar to this statement in *Presidio Bridge:* "Appellant's pleadings state a claim under our State Constitution and Federal Constitution, and as such operate as a waiver of sovereign immunity and legislative permission is not required." *Presidio Bridge*, 726 S.W.2d at 213. At first blush, this statement would seem to support the assertion that the state has waived sovereign immunity for any claim based on the Texas Constitution. However, this conclusion is simply erroneous. The statement quoted above is made solely in reference to article I, section 17 of the Texas Constitution, which prohibits the state from taking, damaging, or destroying property for the public use without giving adequate compensation to the owner of the property. It is true that this provision constitutes a limited waiver of sovereign immunity and provides a cause of action against the state if the provision is violated. However, this is the extent of the waiver; it does not apply outside of this context. Moreover, a close examination of *Presidio Bridge* and *Steele* clearly demonstrates that the courts were referring only to article I, section 17. These statements certainly are not generic pronouncements that the state has waived sovereign immunity in cases in which the causes of action are based on the Texas Constitution.

■ The Plaintiff's second argument that the Defendants waived sovereign liability is premised upon the Defendants' removal of this case from state court. In the Plaintiff's estimation, this removal constitutes a consent to answer the Plaintiff's claims in federal court, which consequently waives the Defendants' sovereign immunity. The Court is not inclined to give this argument much credence. First, the Plaintiff provides, and the Court can find, absolutely *no* case law justifying this assertion. Second, the waiver of sovereign immunity must be clear and is not to be lightly inferred. *United Carolina*, 665 F.2d at 559 (citing *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974)). Waiver may be found only where the waiver is express or the inference of waiver is overwhelming. *Id.* The Defendants' removal of this case from state court to federal court can hardly be characterized as an express or even inferred waiver of their sovereign immunity. In fact, a defendant's right to remove a case from state court to federal court is absolute so long as all statutory prerequisites are met. *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1975). It is incongruous to contend that a defendant could be penalized or lose valuable and important defenses and immunities because the right to removal is asserted.

### Disposition of the Case

Having concluded that the Defendants possess sovereign immunity, and that the Defen-

---

58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.1982). Because the Court has determined that the Defendants possess sovereign immunity, the Court does not examine this alternate defense in any great detail. However, the Court notes in passing that a superficial examination of the merits of this issue leads the Court to believe that this defense is meritorious.

dants have not waived this immunity, the Court must determine the proper disposition of this case. The Plaintiff contends that if the Court finds the Defendants immune from suit, the Court must remand this entire case to state court. The Plaintiff claims that, because sovereign immunity is a *jurisdictional* bar to suit, the Defendants removal of this case to this court was improvident.

While the Plaintiff does correctly characterize the jurisdictional effect of sovereign immunity, the Plaintiff overexaggerates its effect on this case. Regardless of the ultimate disposition of the claims and parties to which sovereign immunity applies, there yet exists in this case several claims and parties, namely the 42 U.S.C. § 1983 action for violation of the First and Fourteenth Amendments against the members of the Board of Regents in their *individual* capacity, that are not affected by sovereign immunity. Consequently, the Court still has jurisdiction over this case. Therefore, the Plaintiff's assertion that the Court should remand the entire case to state court is specious. The only real question concerns the disposition of the claims affected by sovereign immunity. Specifically, must the Court remand these claims to state court or may this Court simply dismiss these claims?

The Court admits that Plaintiff's argument—that the jurisdictional bar of sovereign immunity deprives the Court of jurisdiction, making the Defendants' removal wrongful—does make a certain amount of intuitive sense. Nevertheless, the Court concludes that a closer examination of the elements at work when a case is removed demonstrates that the Court may properly retain this case and dismiss the claims affected by sovereign immunity.

 When a defendant removes a case to federal court, whether the federal court possesses jurisdiction over that case is determined by examining the face of the complaint, and only the face of the complaint, at the time of removal. Wright, Miller, & Cooper, Federal Practice and Procedure § 3722 at 255–60 (1985). In non-diversity cases, if the face of the complaint reveals a federal question, then the federal court has jurisdiction. *Id.* Furthermore, once federal juris-

diction is established, a plaintiff cannot precipitate a remand by amending the complaint to eliminate the grounds upon which jurisdiction is based. *Id.* at 276–78. In other words, if a federal question appears at the moment of removal, the Plaintiff can do nothing to defeat jurisdiction.

 In this case, the Plaintiff's complaint clearly revealed a federal question at the time of removal. The fact that the Defendants possess a defense that prevents the Court from hearing many of the Plaintiff's claims is only revealed through other pleadings and motions which the Court is prohibited from considering at the time of removal. Consequently, in the Court's estimation, the Court's jurisdiction over the claims affected by sovereign immunity was clearly and irrevocably established at the time of removal. Thus, the Court can properly make an ultimate and final disposition of those claims rather than remand them to state court. If a plaintiff can do nothing to defeat removal jurisdiction once it has been established, then a defendant should not be able to inadvertently extinguish jurisdiction by asserting an immunity to which he is justifiably entitled.

The Court finds support for this conclusion by examining *Lewis v. Midwestern State University*, 837 F.2d 197 (5th Cir.1988). In that case, which the defendant university had removed to federal court, the district court determined that sovereign immunity protected the defendant university from suit. The district court, therefore, dismissed the plaintiff's claims, and the Fifth Circuit affirmed this dismissal. Although the Fifth Circuit's opinion makes no reference to the rationale for this disposition, it is reasonable to infer that the Fifth Circuit entertained no doubt that the district court possessed the jurisdiction necessary to dismiss these claims. If the district court did not have jurisdiction, the Fifth Circuit would not have been able to merely affirm the decision, but would have been required to send the case back to the district court so that the district court could properly remand the case to state court.

Therefore, despite the fact that sovereign immunity is a jurisdictional bar to suit, the Court concludes that it is not only justified in

refusing to remand any part of this case but also justified in DISMISSING the Plaintiff's 42 U.S.C. § 1983 action alleging violations of the First and Fourteenth Amendments and the Plaintiff's allegations that the Defendant violated rights guaranteed under several provisions of the Texas Constitution which he brought against Defendants Lamar University System, the Board of Regents, and George McLaughlin, Ted Moor, Amelie Cobb, C.W. Conn, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy, and Ron Steinhart, in their official capacity. Furthermore, because the dismissal of these claims disposes of all claims brought against these Defendants, the Court also DISMISSES WITH PREJUDICE Defendants Lamar University System, the Board of Regents, and George McLaughlin, Ted Moor, Amelie Cobb, C.W. Conn, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy, and Ron Steinhart, in their *official* capacity, from this lawsuit.

The Court wishes to reiterate that this Order in no way addresses or expresses any opinion concerning the disposition of the claims still extant against George McLaughlin, Ted Moor, Amelie Cobb, C.W. Conn, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy, and Ron Steinhart, in their *individual* capacity. However, in accordance with the Court's instructions of November 23, 1992, the Court does invite the remaining Defendants to file *brief and succinct* dispositive motions concerning the existence of qualified immunity and the validity of the Plaintiff's claims based on the Texas Constitution, particularly in light of *Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 584 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The Court ORDERS the Defendants to file these motions, if any, on or before April 23, 1993, and ORDERS the Plaintiff to file his response to such motion(s), if any, on or before May 7, 1993. The Defendants will not be permitted or required to reply to this response. The Court also expressly ORDERS the parties to adhere to the page limit guidelines established by the Court at the November 23, 1992, hearing.

Finally, the Court ORDERS the parties to file nothing further in this Court concerning the issues definitively addressed in this Order. All further relief concerning these issues must be sought, as may be timely, from the United States Court of Appeals for the Fifth Circuit. Costs incurred herein to date shall be borne by the parties incurring same.

IT IS SO ORDERED.